## Toni Baccanti *vs.* George I. Morton.

Worcester. April 5, 2001. - August 13, 2001.

Present: Marshall, C.J., Greaney, Spina, Cowin, Sosman, & Cordy, JJ.

*Divorce and Separation,* Division of property, Findings.

A Probate Court judge considered all the relevant factors under G. L. c. 208, § 34, and no irrelevant factors, in dividing the parties' marital estate, and the reasons for his decision were apparent in his findings and rulings. [789-792]

A Probate Court judge did not abuse his discretion in dividing the parties' premarital assets, particularly his division of the husband's premarital assets, given the judge's conclusions regarding the parties' equal contributions to the marital partnership and his discretion in equitably dividing the marital estate. [792-793]

This court concluded that language in G. L. c. 208, § 34, that a party's estate includes "all vested and nonvested benefits, rights and funds" clearly indicated that both vested and unvested stock options may be treated as marital assets for purposes of dividing a marital estate. [793-796]

This court concluded that, in those future divorce proceedings in which the division of employee stock options is contested, in order to determine whether and to what extent stock options may be included in the marital estate, the judge must determine if the options were given for efforts expended before, during, or after the marriage; furthermore, this court stated the relevant factors or circumstances surrounding the grant of options that should be considered; the burden of proof in such cases; a time rule for apportioning issued but unvested stock options that judges, in their broad discretion, may modify to achieve the most equitable apportionment; and, once the options have been apportioned, the procedure for determining how and when to value the options. [796-803]

A Probate Court judge did not abuse his discretion in awarding the wife in a divorce proceeding one-half of the husband's issued but unvested employee stock options where, by failing to argue below that his options were issued for future services to be performed after dissolution of the marriage, the husband waived his right to raise it on appeal, and where, even if the husband had raised the argument at trial, he offered no evidence to substantiate his assertion that his options were an incentive for future services. [803-804]

Complaint for divorce filed in the Worcester Division of the Probate and Family Court Department on June 15, 1995.

The case was heard by *John J. Moynihan*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mark I. Zarrow* for the defendant.

*Penelope A. Kathiwala* (*Barbara A. Cunningham* & *Michelle R. King* with her) for the plaintiff.

COWIN, J. The husband, George I. Morton, appeals from a judgment of divorce issued by a Probate and Family Court judge. He claims that the judge (1) failed to consider the requisite factors under G. L. c. 208, § 34, in dividing the marital estate; (2) abused his discretion in dividing premarital assets; and (3) erred in awarding the wife, Toni Baccanti, one-half of the husband's unvested employee stock options. We transferred the case to this court on our own motion, and we affirm the judgment of the Probate and Family Court judge.

We recite the facts from the judge's findings and the uncontradicted evidence that was before him, reserving recitation of certain facts as they become relevant to the issues raised. The husband and wife were married on June 1, 1986. They adopted a boy, Sean, who was born on July 20, 1983, and began living with them in August, 1988.

After Sean came to live with the parties, they agreed that the wife would work part time so that she could be home with Sean after school. Sean's behavioral problems required extra attention. At first, the wife worked part time for Data General. Later, she taught college computer courses and established a computer software consulting business that she ran from her home. The husband is an engineering manager at Analog Devices, Inc., and has been working there since January, 1988.

The judge determined that both parties contributed to the marriage. He found that the husband was the primary financial provider and that, while both parties participated in raising Sean, the wife was the primary caretaker. He also found that the husband and wife shared the household chores, but that the wife was largely responsible for the maintenance and operation of the marital home.

Each spouse had acquired assets prior to the marriage. The husband owned a home, in which the parties lived when they

first were married. They paid off the mortgage and kept that house, but purchased a new home together. The husband also owned stock that he either purchased or received as a gift before the marriage. The husband and wife each had their own IRA accounts and had money in separate checking and savings accounts. Initially, they contributed money from these separate checking accounts to pay bills, but they later opened a joint account in which they deposited their paychecks and from which they paid expenses. They accumulated other assets during the marriage, including stock and mutual funds. Some of these assets were held in one spouse's name, while others were held in both names. The husband also had a 401K plan through Analog Devices.

The wife filed a complaint for divorce in June, 1995, in the Worcester Division of the Probate and Family Court Department. Trial began in October, 1998, and the judge granted a judgment of divorce nisi in June, 1999. He granted both parties legal custody of Sean and the wife physical custody. He ordered the husband to pay alimony and child support to the wife. As to the assets, the judge awarded each party approximately an equal amount. The marital home was assigned to the wife, while the home originally purchased by the husband was assigned to him. The parties were awarded their separate checking and savings accounts, as well as their mutual fund and IRA accounts. The joint checking account was divided equally. The wife was awarded a jointly held brokerage account in its entirety. She also was given twenty-five per cent of the value of stock held in a brokerage account in the husband's name; the husband was awarded the remainder. In addition, the judge assigned each party one-half of the husband's 401K account and the vested and unvested stock options that the husband had received from his employer. The husband has appealed from the judgment, challenging certain aspects of the division of the marital estate.

I

The husband argues that the judge failed to make findings as to each of the requisite factors under G. L. c. 208, § 34, in

dividing the marital property.[1] Section 34 provides in relevant part:

> "[I]n fixing the nature and value of the property . . . to be so assigned, the court . . . shall consider the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. . . . [T]he court shall also consider the present and future needs of the dependent children of the marriage."

We review the judge's findings to determine whether he considered all the relevant factors under § 34 and no irrelevant factors. See *Williams* v. *Massa*, 431 Mass. 619, 631 (2000); *Mahoney* v. *Mahoney*, 425 Mass. 441, 447 (1997); *Bowring* v. *Reid*, 399 Mass. 265, 267-268 (1987); *Rice* v. *Rice*, 372 Mass. 398, 402-403 (1977). We then determine whether the reasons for his conclusions are "apparent and flow rationally" from his findings and rulings. *Williams* v. *Massa*, *supra*. See *Mahoney* v. *Mahoney*, *supra*.

The husband contends that the judge failed to make specific findings as to certain factors. While the judge's findings might have been more precise, we are confident that he properly evaluated the relevant factors and weighed the competing considerations. First, the husband claims that the judge did not consider the parties' premarital assets. We disagree. In reviewing the estate of the parties and the amount and sources of their income, the judge expressly stated that he "considered [the husband's] contributions from assets he acquired prior to the marriage, including the $36,000 down payment he made on the [home purchased by the husband before the marriage] and the stock which he either purchased or received as gifts."

In addition, the husband argues that the judge did not credit

---

[1]The husband also claims that the judge's memorandum of decision does not constitute the findings required by statute, because the judge stated that his memorandum served as his "rationale" in support of the judgment. The label given the findings is not important; what is important is that "a judge's findings clearly indicate that he has weighed all the statutory considerations." *Bianco* v. *Bianco*, 371 Mass. 420, 423 (1976).

his testimony that the parties orally agreed to "keep the assets that we had accumulated prior to our marriage separate, and . . . to add to those assets separately from our salaries or any other . . . sources that we each individually had and that we would just pay our living expenses together." The judge was not required to credit this testimony. See, e.g., *Early* v. *Early*, 413 Mass. 720, 727 (1992). Although the parties did maintain the accounts that they had established prior to the marriage, there is no evidence that they agreed to keep the assets in these accounts separate in the event of divorce. The wife testified that there was no such agreement. Moreover, the husband's contention is belied by the fact that both parties contributed to paying off the mortgage on the house purchased by the husband before the marriage and by the fact that the parties opened and maintained joint checking and brokerage accounts. This evidence indicates that the fine line dividing premarital and marital assets that the husband suggests does not exist and that the parties intended to do more than pay living expenses together. The judge was warranted in finding that he was "not persuaded by [the husband's] contention that the parties orally agreed to retain their separate assets in the event of a divorce. The parties never executed a pre-nuptial agreement and they did maintain joint accounts."

The husband next claims that the judge did not make "specific findings" regarding the accounts that each party individually opened prior to the marriage and maintained after the marriage. The judge did make findings as to these accounts; he simply did not make the findings sought by the husband. The judge provided a detailed chart of all the parties' accounts and in whose name the accounts were held. Moreover, his findings make clear that he was aware of the parties' separate accounts. With the exception of stock held in the husband's name in a brokerage account, the judge assigned the husband all the accounts (including checking, savings, IRA, and brokerage accounts) that were in his name only, as he did for the wife. The judge granted the wife the jointly held brokerage account in its entirety, but divided the joint checking account equally.

The husband also asserts that the judge did not make a finding with respect to the "contribution of each of the parties in

the acquisition, preservation or appreciation in value of their respective estates." G. L. c. 208, § 34. This is a discretionary, not a mandatory, factor under the statute. See *id.* ("The court may also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates . . ."). The judge therefore was not required to make such a finding. However, the judge did discuss the parties' respective contributions to the marriage, including their division of responsibilities in caring for their home as well as the husband's contributions from assets he acquired prior to the marriage.

Finally, the husband argues that the judge did not consider the wife's education or her prior work history. The judge did comment briefly on the wife's occupation, vocational skills, employability, and opportunity to acquire assets and income in the future in his memorandum, as required by the statute. The judge stated that the wife taught computer courses part time and had started a computer software consulting business. He noted the amount that the wife earned from these endeavors. Further, he indicated that the wife should be able to work full time once Sean graduated from high school. This indicates sufficiently the wife's ability to earn income and support herself in the future. After examining the judge's decision, we conclude that he considered all the relevant factors under § 34, and no irrelevant factors, and that the reasons for his decision are apparent in his findings and rulings.

II

The husband claims that the judge abused his discretion in assigning the wife portions of the husband's premarital assets. We disagree.

General Laws c. 208, § 34, provides that a judge "may assign to either husband or wife all or any part of the estate of the other." That includes property acquired prior to the marriage. See *Rice* v. *Rice, supra* at 400-401. Once the judge decides to include premarital assets as part of the estate, he has considerable discretion in determining how to divide the assets equitably. See *Williams* v. *Massa, supra* at 626 ("Massachusetts has no hard and fast rules" as to appropriate allocation of premarital

assets); *Bianco* v. *Bianco*, 371 Mass. 420, 422-423 (1976). We will not reverse a judgment with respect to property division unless it is "plainly wrong and excessive." *Mahoney* v. *Mahoney*, *supra* at 447, quoting *Bowring* v. *Reid*, *supra* at 267. *Pare* v. *Pare*, 409 Mass. 292, 296 (1991). *Redding* v. *Redding*, 398 Mass. 102, 107 (1986).

In this case, the judge determined that an evenly divided distribution of the marital property was most equitable in light of the parties' contributions to the marital enterprise, the length of the marriage, and their ability to obtain future income and assets. See *Heins* v. *Ledis*, 422 Mass. 477, 482 (1996) (property division is based on spouses' joint contributions to marriage); *Heacock* v. *Heacock*, 402 Mass. 21, 24 (1988) (purpose of division of marital property "is to recognize and equitably recompense the parties' respective contributions to the marital partnership"). He did credit the fact that the husband had brought assets into the marriage, but decided that an even distribution should include assigning to the wife some portions of the husband's premarital property. Given the judge's conclusions regarding the parties' equal contributions to the marital partnership and his discretion in equitably dividing the marital estate, we cannot conclude that his division of the husband's premarital assets was plainly wrong or excessive. Cf. *Williams* v. *Massa*, *supra* at 632-633 (judge's decision to award husband his inherited and gifted assets "flowed rationally from her determination that the 'greater burden or responsibility fell to the husband throughout the marriage' ").

## III

The husband argues that the judge erred in awarding the wife one-half of his issued but unvested employee stock options.[2] He claims that the options should not have been considered marital property subject to division because they would not vest until

---

[2]The judge divided only those unvested stock options that had been issued to the husband before December 16, 1997. Neither party has challenged this decision, and therefore our discussion of the husband's unvested stock options refers only to those options issued prior to this date.

The judge also awarded each spouse one-half of the husband's vested options. The husband does not challenge this division.

after dissolution of the marriage. In the alternative, he asserts for the first time on appeal that, if the options are considered marital property, only that portion of the options attributable to efforts he expended during the marriage should be subject to division.

## A

As a preliminary matter, we consider whether unvested stock options are assets that may be included in the marital estate. This involves a question of statutory interpretation that this court has not previously addressed. General Laws c. 208, § 34, provides that "the court may assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retirement benefits, . . . pension, profit-sharing, annuity, deferred compensation and insurance." We interpret a statute consistent with the legislative intent and in order to effectuate the purpose of its framers. See *Boulter-Hedley* v. *Boulter*, 429 Mass. 808, 811 (1999), and cases cited. When the statutory language is plain and unambiguous, we apply its ordinary meaning. See *Massachusetts Broken Stone Co.* v. *Weston*, 430 Mass. 637, 640 (2000), and cases cited.

"In the past, in considering whether particular interests constitute part of the property of the marital estate of a party to a divorce, this court has not been bound by traditional concepts of title or property. Instead, we have held a number of intangible interests (even those not within the complete possession or control of their holders) to be part of a spouse's estate for purposes of § 34." *Lauricella* v. *Lauricella*, 409 Mass. 211, 214 (1991), citing *Dewan* v. *Dewan*, 399 Mass. 754, 755 (1987) (unvested pension rights); *Hanify* v. *Hanify*, 403 Mass. 184, 186-190 (1988) (rights in pending lawsuits); *Lyons* v. *Lyons*, 403 Mass. 1003, 1003 (1988) (rights under contingent fee agreement). Although the statute does not expressly mention stock options, the language in the statute that a party's "estate" includes "all vested and nonvested benefits, rights and funds" clearly indicates that both vested and unvested stock options

may be treated as marital assets.[3] In their simplest form, stock options are another way for employers to compensate their employees. An option gives the employee the right to purchase the employer's stock at a predetermined price during a prescribed time period. See, e.g., *Bornemann* v. *Bornemann*, 245 Conn. 508, 517 (1998); Littman, Valuation and Division of Employee Stock Options in Divorce, 29 Colo. Law. 61, 61 (2000). The fact that the options will vest in the future (even after dissolution of the marriage) is no different from unvested retirement benefits, and we have held that unvested retirement (including pension) benefits are assets that may be included when dividing the marital estate. See *Mahoney* v. *Mahoney*, *supra* at 443; C.P. Kindregan, Jr., & M.L. Inker, Family Law and Practice § 41.6, at 63 (2d ed. 1996).

What distinguishes employee stock options from most other assets is the uncertainty of their value: an employee who has been given options may never realize any value from them if their vesting is contingent on continued employment and the employee is no longer employed by the company, or if the value of the stock when the options vest is less than the price at which the options can be exercised. That, however, is simply the nature of the asset and a risk inherent in accepting stock options. Other assets, such as real estate and stock, are also subject to fluctuations in value based on varying economic factors beyond either party's control. Cf. *Hanify* v. *Hanify*, *supra* at 188 ("The fact that the pending lawsuits are of uncertain

---

[3]The husband argues that granting stock options to employees has emerged only in the past ten to fifteen years, and thus he claims that "the [L]egislature did not contemplate the special nature of stock options when it passed [G. L. c. 208, § 34,] in 1974." However, the phrase "including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage" was added to the statute in 1990 when, as the husband points out, granting stock options to employees was becoming increasingly common. See St. 1990, c. 467.

The husband also maintains that his unvested stock options were not "*accrued during the marriage*" under G. L. c. 208, § 34, but he offers no suggestion as to what this phrase means. It appears that the husband would equate the word "accrue" with the word "vest" and that, because his options have not vested during the marriage, they cannot be included in the marital estate. The statute is not so limited. It permits judges to assign nonvested benefits, rights, and funds, which clearly indicates that vesting during the marriage is not a requirement.

value does not require their exclusion from the marital estate"). An employee may remain with the company until the options vest and, if the value of the stock has increased, the asset will have value. A judge can provide for this uncertainty by dividing the shares at the time of dissolution and ordering any proceeds from the options to be divided if and when they vest and are exercised.[4] Cf. *Dewan* v. *Dewan, supra* at 757 (although assigning present value to future pension benefits is preferred, "an area of discretion must be left to the judge because a pension plan may have specific provisions which favor" allocating benefits if and when received). That way, the husband and the wife share in the rise or fall of the value of the asset.

Granting stock options to employees has become increasingly widespread. See, e.g., Curtis, Valuation of Stock Options in Dividing Marital Property Upon Dissolution, 15 J. Am. Acad. Matrimonial Law 411, 411-412 (1998) (Curtis); Business Week 16 (May 28, 2001) ("America's 200 largest corporations are allocating a record 15% of their shares to employee stock options"). If we concluded that unvested stock options could not be considered marital assets, we would be denying one spouse the right to share in what "may be the most valuable asset between the spouses," and one to which both may have contributed. Curtis, *supra* at 412. Such an unjust result cannot have been the intent of the Legislature.[5]

## B

Having concluded that unvested stock options are assets that

---

[4]In addition, the judge can give the nonemployee spouse the power to exercise his or her shares of options through the employee spouse, regardless of whether the employee spouse ever exercises his or her shares once they have vested.

[5]Our conclusion that unvested stock options may be considered marital property is consistent with the majority of State courts that have addressed this issue. See, e.g, *In re Marriage of Hug*, 154 Cal. App. 3d 780, 782-783 (1984); *Bornemann* v. *Bornemann*, 245 Conn. 508, 520 (1998); *Batra* v. *Batra*, 17 P.3d 889, 894 (Idaho Ct. App. 2001); *Green* v. *Green*, 64 Md. App. 122, 136 (1985); *Davidson* v. *Davidson*, 254 Neb. 656, 664 (1998); *DeJesus* v. *DeJesus*, 90 N.Y.2d 643, 650 (1997); *Matter of the Marriage of Short*, 125 Wash. 2d 865, 874 (1995). But see *Hann* v. *Hann*, 655 N.E.2d 566, 569 (Ind. Ct. App. 1995); *Hall* v. *Hall*, 88 N.C. App. 297, 307 (1987). See also Curtis, 15 J. Am. Acad. Matrimonial Law 411 (1998) (collecting cases).

may be included in a party's assignable estate, we next address to what extent they may be included. The division of property incident to a divorce proceeding is based on the principle that marriage is a partnership. See *Heins* v. *Ledis*, 422 Mass. 477, 480 (1996). Assets are assigned in order to recognize and recompense the parties' contributions to the partnership. See *Heacock* v. *Heacock*, 402 Mass. 21, 24 (1988). The key question, then, in assigning one spouse's employee stock options is what, if any, portion of the options is to be considered marital property and what, if any, portion is to be considered nonmarital property because the options relate to a period subsequent to the marriage.

A minority of State courts have held that options granted during the marriage are marital property and may be included in the marital estate in their entirety. See, e.g., *Green* v. *Green*, 64 Md. App. 122, 136 (1985); *In re Marriage of Chen*, 142 Wis. 2d 7, 12 (1987). Most courts, however, have held that stock options are marital property only to the extent that they reflect efforts expended during the marriage. See, e.g., *In re Marriage of Hug*, 154 Cal. App. 3d 780, 784 (1984); *Bornemann* v. *Bornemann, supra* at 522 & n.6 (collecting cases); *Davidson* v. *Davidson*, 254 Neb. 656, 663 (1998); *DeJesus* v. *DeJesus*, 90 N.Y.2d 643, 648 (1997).

According to these courts, whether options should be considered part of the marital estate depends on the reason (or reasons) for which they were given. See, e.g., *In re Marriage of Hug, supra* ("since the purposes underlying stock options differ, reference to the facts of each particular case must be made to reveal the features and implications of a particular employee stock option"). Options may be given to an employee as compensation for past services (e.g., a project already completed), present services (e.g., accepting employment with the company), future services (e.g., remaining with the company or work to be performed in the future), or a combination thereof. See, e.g., *Bornemann* v. *Bornemann, supra* at 522; *Batra* v. *Batra*, 17 P.3d 889, 893 (Idaho Ct. App. 2001); *Garcia* v. *Mayer*, 122 N.M. 57, 60-61 (Ct. App. 1996) ("The purpose of awarding options to employees may differ from company to company and may even change from time to time within a single company").

A majority of courts have concluded that if stock options were given as compensation for past or present services performed during the marriage, their value should be recognized as part of the marital estate. See, e.g., *DeJesus* v. *DeJesus, supra* at 650-651; *Matter of the Marriage of Short,* 125 Wash. 2d 865, 873 (1995). However, according to the decisions of such courts, if stock options were given as compensation for future services, which may extend beyond the time of the marriage, then they are not so considered. See, e.g., *In re Marriage of Nelson,* 177 Cal. App. 3d 150, 154-155 (1986); *DeJesus* v. *DeJesus, supra.* These courts have concluded that only that portion of the stock options attributable to the efforts of the employee spouse during the marriage properly may be considered part of the marital estate. See, e.g., *In re Marriage of Hug, supra* at 784; *Davidson* v. *Davidson, supra* at 663; *DeJesus* v. *DeJesus, supra* at 648.

As a general matter, we agree with the majority of State courts that have considered this issue. Their approach focuses on the parties' respective contributions in acquiring the asset, rather than on the date that the options were granted. This is consistent with the purpose of dividing property under G. L. c. 208, § 34: "to recognize and equitably recompense" the parties' joint efforts in obtaining and maintaining marital assets. *Heacock* v. *Heacock, supra* at 24.

However, most courts rigidly define marital property as only that property acquired, or, in the case of stock options, awarded for the expenditure of efforts, during the marriage. We decline to adopt such a restrictive approach. General Laws c. 208, § 34, requires that all property "whenever and however acquired" is part of the estate that may be assigned to either spouse. *Rice* v. *Rice, supra* at 400. Stock options, as property to which a spouse holds title, must be treated the same as other marital property and considered part of the marital estate even if given for past services performed prior to the marriage. See *id.* at 401.

In addition, there may be circumstances, such as a long-term marriage in which both parties have contributed to the "partnership" and the options are exercisable soon after the divorce, where the judge finds that stock options should be deemed wholly marital property even though the options were given for services to be performed in part after dissolution of the marriage.

In these cases, the judge must determine the extent of each spouse's contribution to the asset. Cf. *Pascale* v. *Pascale*, 140 N.J. 583, 610 (1995) ("stock options awarded after the marriage has terminated but obtained as a result of efforts expended during the marriage should be subject to equitable distribution"). See *Dalessio* v. *Dalessio*, 409 Mass. 821, 829 (1991) (lawsuit proceeds compensating husband in part for future loss of earning capacity could be included in divisible estate); *Johnson* v. *Johnson*, 22 Mass. App. Ct. 955, 956-957 (1986) (no error in including percentage of spouse's future pension benefits in marital estate, despite fact that percentage includes benefits not attributable to marriage). The trial judge has discretion under G. L. c. 208, § 34, to decide whether an asset should be included in the marital estate based on the parties' joint efforts in acquiring that asset and should not necessarily be confined by the period of the marriage.[6] However, the fact that only one party may exert efforts after dissolution of the marriage to obtain the asset should be taken into account when dividing property in a divorce proceeding. *Dalessio* v. *Dalessio, supra* at 831. In future cases, "judges should indicate for the record that they have considered this fact and that it has entered into their division of the marital assets." *Id.*

We thus conclude that, in those cases in which the division of options is contested, in order to determine whether and to what extent stock options may be included in the marital estate, the judge must determine if the options were given for efforts expended before, during, or after the marriage.[7] This requires a finding as to the reason (or reasons) for which the options were

---

[6]Although in some cases stock options may be given to an employee for future services that will be performed after dissolution of the marriage, the value of the employee to the employer, which caused the employer to reward the employee with stock options, may have come about as a result of the marital partnership. The nonemployee spouse may have contributed to the employee spouse's ability to achieve the position for which the options were given. Trial judges have discretion to consider the nonemployee spouse's contributions in obtaining the options.

[7]If the options were given for efforts expended before or during the marriage, they are part of the marital estate. See *Rice* v. *Rice, supra* at 400. If, however, the options were given for efforts to be expended after the marriage, in order to include them in the marital estate, the judge must determine whether the options were nonetheless given for efforts attributable to the marital partnership. See note 6, *supra.*

given (i.e., for past, present, or future services). In making such a finding, the judge may look to the employee's stock option plan, testimony from the employee or a representative of the employer, or testimony from an expert witness, if any such evidence is offered. See, e.g., *In re Marriage of Hug, supra* at 784. The judge also may consider any other relevant factors or circumstances surrounding the grant, including whether the options were "intended to (1) secure optimal tax treatment, (2) induce the employee to accept employment, (3) induce the employee to remain with the employer, (4) induce the employee to leave his or her employment, (5) reward the employee for completing a specific project or attaining a particular goal, [or] (6) be granted on a regular or irregular basis."[8] *Davidson* v. *Davidson, supra* at 665. Judges should be aware of the potential for fraud in this area, particularly the possibility of collusion between the employee and the employer as to the reasons behind the issuance of the stock options.

The party challenging the inclusion of the options in the marital estate (presumably, the employee who was given the options) has the burden of proving that the options were given for future services to be performed after dissolution of the marriage. In addition, this party has the burden of establishing that the non-employee spouse did not contribute to the employee spouse's ability to acquire the options at issue and, for that reason, the value of the options either in whole or in part should not be considered part of the marital estate. The party to whom the options are issued is in a better position to obtain information regarding the circumstances surrounding the grant, and thus should bear the burden of proof on this issue.

If the party with the burden of proof establishes that the options were given in whole or in part for future services to be performed after dissolution of the marriage, and the judge determines that equity requires that the options be apportioned,[9] the judge must calculate the portion of the options that properly

---

[8]We will not reverse the judge's decision unless clearly erroneous. See, e.g., *Connolly* v. *Connolly*, 400 Mass. 1002, 1003 (1987), citing *Fox Tree* v. *Harte-Hanks Communications, Inc.*, 398 Mass. 845, 847 (1986). See also Mass. R. Dom. Rel. P. 52 (a) (2001).

[9]Of course, as discussed above, see note 7, *supra*, the judge also could find that the options should be deemed marital property despite the fact that they

may be included in the marital estate. The majority of jurisdictions apply some variation of a "time rule" to make this calculation, whereby the unvested options are apportioned based on the time that the employee both owned the options and was married and the time from issuance of the options to vesting. See, e.g., *In re Marriage of Nelson*, 177 Cal. App. 3d 150, 155 (1986); *Davidson* v. *Davidson, supra* at 665; *Garcia* v. *Mayer*, 122 N.M. 57, 61 (Ct. App. 1996); *DeJesus* v. *DeJesus, supra* at 652-653. Because, in Massachusetts, property acquired prior to the marriage may be included in the marital estate, see *Rice* v. *Rice, supra* at 400, we modify the time rule as follows: the number of unvested shares of stock options is multiplied by a fraction whose numerator represents the length of time that the employee owned the options prior to dissolution of the marriage (i.e., the length of time that the employee owned the options prior to and during the marriage), and whose denominator represents the time between the date the options were issued and the date on which they are scheduled to vest. The resulting product is the number of shares subject to division.[10,11] The judge then would apply the factors under G. L. c. 208, § 34, to assign equitably those shares subject to division.

A time rule can be an effective and straightforward means for

were given in part for services to be performed after dissolution of the marriage.

[10]For example, we hypothesize that an employee was given one hundred shares of unvested stock options; that they were issued three years before dissolution of the employee's marriage; and that they will vest two years after dissolution of the marriage. The time that the employee owned the options prior to dissolution of the marriage would be three years, and the time between the date the options were issued and the date that they vest would be five years (three years before dissolution plus two years after). The portion of the options that could be included in the marital estate would be three-fifths. The one hundred shares are then multiplied by three-fifths, which equals sixty. Therefore, sixty of the one hundred shares of unvested stock options may be subject to division between the spouses. The judge would then make an assignment of those sixty shares of stock options in accordance with G. L. c. 208, § 34. The remaining forty shares would not be included in the marital estate and thus would belong solely to the employee spouse.

[11]We emphasize that a time rule is applicable *only* when the party with the burden of proof has established that the unvested stock options were given in whole or in part for future services to be performed after dissolution of the marriage *and* the judge determines, based on the factors under G. L. c. 208, 34, that a portion of the options should not be included in the marital estate.

apportioning issued but unvested stock options. We recognize, however, that one formula will not necessarily work in every case and emphasize that trial judges have broad discretion to modify the time rule or adopt another method that will achieve the most equitable apportionment in a particular case. Cf. *In re Marriage of Hug, supra* at 792 (stressing that no single rule or formula can be used in every case and that trial courts should have discretion to fashion approaches that will result in most equitable outcome).

Once the options have been apportioned (pursuant to a time rule or some alternative method, if the judge decides that apportionment is necessary) and/or assigned, the judge must determine how and when to value the options. The judge here adopted an "if and when received" method. He ruled that the husband could exercise the options and then sell any or all of his shares if and when the options vest. If so, the judge determined that the husband must share with the wife one-half of the net gain (i.e., the gross proceeds less the purchase price and less the tax consequences to the husband) from the sale. If the husband decides not to exercise his vested options, the judge ordered that the husband notify the wife of his decision and allow her to exercise her share of the options through him. The wife would then be responsible for the tax consequences resulting from the sale of the shares.[12]

Although a present division of assets is generally preferable, if present valuation is uncertain or impractical, as it often will be with unvested stock options, "the better practice is to order that any future recovery or payment be divided, if and when received, according to a formula fixed in the property assignment." *Hanify* v. *Hanify*, 403 Mass. 184, 188 (1988), and cases cited. Cf. *Early* v. *Early*, 413 Mass. 720, 726 (1992) ("award of pension benefits 'if and when received' . . . avoids the difficult problem of determining the present value of the pension"). We leave it to the judge's discretion to determine in

---

[12]Although the judge did not specifically deal with the possibility that the husband would exercise the options but not sell his shares, the implication in the judge's decision is that in such a situation the husband would be required to notify the wife that he has exercised his options but is not selling the stock (at least at that time) and allow her to sell her half of the shares.

each case whether a present value can be assigned to the options or whether it is more practical and equitable to divide the proceeds (stock or cash derived from the sale of the stock) if and when the options vest and are exercised.

## C

In the present case, we affirm the judge's decision to include the husband's issued but unvested stock options in the marital estate. The husband did not argue at trial that his options were given in whole or in part for future services to be performed after dissolution of the marriage. Instead, he argued only that his unvested stock options could not be considered marital assets because they would not vest until after dissolution of the marriage.[13] As discussed above, the determinative factor is whether the options, or a portion of the options, are attributable to the marital partnership, not whether they will vest after dissolution of the marriage. Options may vest after the divorce, yet the services for which the options were given may have been performed entirely during the marriage. By failing to argue below that his options were issued for future services to be performed after dissolution of the marriage, the husband waived his right to raise it on appeal. See *Cacicio* v. *Secretary of Pub. Safety*, 422 Mass. 764, 769 n.9 (1996), citing *Commissioner of Correction* v. *McCabe*, 410 Mass. 847, 850 n.7 (1991).

Even if the husband had raised the argument at trial, he offered no evidence to substantiate his assertion that his options were an incentive for future services. The record contains insufficient information for the judge to have determined the reason (or reasons) for which the options were granted. The husband neither provided the judge with his employee stock option plan nor testified as to the reasons the options were given to him.[14] Having failed to present any evidence on this issue, the husband could not meet his burden of proving that the options were

---

[13]The husband testified that the unvested options should "stay with me since they are completely unvested."

[14]The wife, not the husband, offered testimony of a financial expert. The expert had reviewed the parties' financial documents contained in the record, but he did not have the benefit of the husband's stock option plan and thus could testify only in general terms as to when options vest, any restrictions on them, and the reasons for which they are granted.

given in whole or in part for future services to be performed after dissolution of the marriage and that at least a portion of them should not be included in the marital estate. Based on the evidence in the record, the judge did not err in concluding that the unvested options granted during the marriage could be included in the marital estate. See, e.g., *Feathler* v. *Feathler*, 33 Mass. App. Ct. 924, 924-925 (1992) (where husband failed to offer testimony for judge to calculate present value of pension, judge "cannot be faulted for fashioning an equitable division" based on information submitted by another witness). Once the judge determined that the options could be included in the marital estate, he had broad discretion in dividing them between the husband and wife. See *Mahoney* v. *Mahoney*, 425 Mass. 441, 443 (1997), citing *Early* v. *Early*, *supra* at 727, and cases cited. There was no abuse of discretion. We affirm the judgment of the Probate and Family Court.

*So ordered.*