In this appeal arising from divorce proceedings in the Probate and Family Court, James F. Ross (husband) primarily challenges the percentage of marital assets awarded to his former wife, Kathleen M. Ross (wife). As the wife, representing herself in this appeal, aptly states in her brief, the issue before us is whether the trial judge, "when making decisions on which the parties themselves could not agree, reasonably exercised her discretion based on sound reasons in the record. Her judgments and rationale demonstrate that she did just what the law required." We affirm.
Background. The parties were married on August 23, 1980. The wife filed a complaint for divorce in 2002; however, the parties subsequently reconciled and no further action was taken until 2011. In September, 2011, a judge entered a temporary order granting the parties shared legal and physical custody of the children, but giving the husband use and occupancy of the marital home, where he continued to reside with the children.
On October 1, 2012, a master was appointed to make findings concerning the property division. After a hearing, the master filed a report on March 10, 2014, recommending that the husband receive the marital home, the husband's pension be divided equally between the parties, the wife retain her Fidelity IRA, and the husband convey fifty-three percent of the value of his Fidelity 401(k) account (401[k] ) to the wife. On July 2, 2014, a judgment of divorce nisi issued, granting the parties a divorce while bifurcating and reserving for later adjudication the issues of property division, support, custody, and parenting time. On September 8, 2014, a judge issued an order incorporating the master's report into the judgment of divorce, except as to the division of the 401(k), of which he allotted fifty-five percent (rather than fifty-three percent) to the wife.
On May 22, 2015, after a four-day trial, a second judge issued a supplemental judgment of divorce, which entered on June 10, 2015, providing, inter alia, that the parties would have shared legal and physical custody of the minor and unemancipated children, that they would share equally in the children's expenses, and that neither party would pay child support or alimony. Notwithstanding the award of shared custody, the husband's residence (the former marital home) was deemed "the children's primary residence for all education and medical purposes."
With respect to the property division, the supplemental judgment incorporated the first judge's order largely approving the master's report. The supplemental judgment further provided that the husband's Nationwide annuity-an asset of which the master was apparently unaware-would be divided fifty-five percent to the wife and forty-five percent to the husband, like the 401(k), "after first paying to the [w]ife the amount of $27,000.00 for past due [temporary] support" owed by the husband and one-half of the principal payments of the mortgage paid by the husband out of the martial estate. As a result, the wife received approximately fifty-five percent of the marital estate.
The husband filed a motion to amend the supplemental judgment, and the judge's order, allowing it in part and denying it in part, entered on July 6, 2015. This appeal followed.[2]
Discussion. 1. Asset division. "[A] probate judge acting under G. L. c. 208, § 34, has broad discretion to assign assets." Denninger v. Denninger, 34 Mass. App. Ct. 429, 430 (1993). "We review the judge's findings to determine whether she considered all the relevant factors under G. L. c. 208, § 34, and whether she relied on any irrelevant factors." Zaleski v. Zaleski, 469 Mass. 230, 245 (2014), citing Baccanti v. Morton, 434 Mass. 787, 790 (2001). "We will not reverse a judgment with respect to property division unless it is 'plainly wrong and excessive.' " Zaleski v. Zaleski, supra, quoting from Baccanti v. Morton, supra at 793. "There is no requirement in G. L. c. 208, § 34, or cases under it, of precise parity in equitable division of marital assets." Cabot v. Cabot, 18 Mass. App. Ct. 903, 905 (1984).
Here, the second judge adopted the master's findings, which included the following: "[d]uring the period of the parties' separation, [the] [h]usband withdrew approximately $166,000.00 from retirement accounts to provide support for himself, [the] [w]ife, and the parties' children"; "[a]lthough ... both parties had obligations to provide support for the children during this period, it would be inequitable to allocate to [the] [w]ife one-half of the amounts claimed expended from the retirement assets"; and "it does not appear that either party will be able to obtain significant employment and the continued support of the parties' children will be from the marital estate." The judge chose not to disturb the master's findings, "particularly given the fact that neither party challenged the [m]aster's findings at trial," but made certain adjustments to account for developments after issuance of the master's report.
The husband claims that the judge failed to make the requisite findings under G. L. c. 208, § 34. We disagree. In addition to adopting the master's findings, the judge made numerous findings addressing the § 34 factors, including, but not limited to, the parties' conduct during the marriage and their contributions to the marital enterprise.[3] The judge found that the parties "equally contributed" to the marital estate and the raising of their children, although the husband "managed the household finances" and his "control over the family finances was at times severe." This control continued through the parties' separation; the judge found that after the wife moved out of the marital home, the husband "excluded" her "from any decision-making regarding the finances and the children." As a result, "[d]uring much of this time, the [w]ife remained homeless and without the necessary financial support or means of support," often relying on financial assistance from her adult children and friends. At the same time, the husband "used marital assets to pay expenses after he was laid off, which practice continued through the date of trial."
The judge noted that the master had provided for a "relatively equal" division, with a "slight adjustment in favor of the [w]ife" in light of the husband's use of marital assets during the separation. Keeping with the master's intent to "relatively equalize the assets," the judge made further adjustments to "credit the [w]ife for the depletion of those assets" up to the time of the trial.[4] On the strength of these findings, the judge's awarding the wife approximately fifty-five percent of the remaining assets was not "plainly wrong and excessive." Zaleski v. Zaleski, 469 Mass. at 245, quoting from Baccanti v. Morton, 434 Mass. at 793. See Moriarty v. Stone, 41 Mass. App. Ct. 151, 157 (1996) ("The parties' respective contributions to the marital partnership remain the touchstone of an equitable division of the marital estate").[5]
The husband further claims that the judge overlooked the children's needs when dividing the marital assets and refusing to order child support. On the contrary, the judge addressed the children's needs in her findings, specifically finding that four of the nine children remained unemancipated. Two of them were full-time college students and the other two "remain[ed] at home and plan[ned] to attend college in the near future." The judge concluded that a child support order was not warranted "given the ages of the children, lack of employment for both parties, and the allocation of marital assets."
Rather, the judge determined that the children's interests would best be served by providing both parents with adequate financial resources to support themselves and the children. We discern no abuse of discretion here, especially where the judge awarded the parties joint custody and ordered them to "share equally in [the children's] agreed-upon college, extracurricular activities, summer school programs and uninsured medical expenses." We are satisfied that the judge's "reasons for [her] conclusions are 'apparent and flow rationally' from [her] findings and rulings." Baccanti v. Morton, 434 Mass. at 790, quoting from Williams v. Massa, 431 Mass. 619, 631 (2000).
2. Life insurance. The husband also challenges the provision of the supplemental judgment requiring him to "maintain in full force and effect his existing [$1 million] life insurance policy ... naming the [w]ife as sole beneficiary for so long as any of the children remain unemancipated." The husband claims, among other things, that the judge erred by requiring him to name the wife as the sole beneficiary and by failing to allow for a reduction in the amount of coverage upon the emancipation of each child.
"[T]he decision to require security in any form lies within the broad discretion of Probate Court judges." Ross v. Ross, 50 Mass. App. Ct. 77, 83 (2000). We discern no abuse of discretion where, in an effort to "relatively equalize the assets" and ensure the wife's ability to care for any unemancipated children, the judge required the husband to maintain the status quo with respect to his life insurance coverage. See Freedman v. Freedman, 49 Mass. App. Ct. 519, 524 (2000) ("The order for life insurance was a reasonable contingency provision and, given the comparatively sparse resources available to [the wife] at the time of trial, was neither excessive nor erroneous because it did not provide for a reduction of coverage over time"). "If the judgment should prove inequitable, the husband may seek modification." Wooters v. Wooters, 42 Mass. App. Ct. 929, 931 (1997).
Conclusion. The supplemental judgment entered on June 10, 2015, and the order entered on July 6, 2015, on the motion to amend the supplemental judgment are affirmed.[6]
So ordered.
Affirmed.

The husband, who filed general notices of appeal, appeals from both the supplemental judgment of divorce and the order on his motion to amend the supplemental judgment.

For example, the judge made the following findings. The parties' "thirty-five (35) year marriage was a traditional one," with the husband filling the role of "the primary wage-earner," while the wife was "the primary homemaker and caretaker of the [parties'] nine (9) children." The husband worked at General Dynamics for thirty-one years, and prior to being laid off in 2011, he "held the position of Senior Engineer in a high-level management position." The wife worked early on in the marriage; however, she had not worked outside of the home for several decades. At the time of trial, the wife was fifty-six and the husband was sixty-three, and neither had any reasonable income earning prospects. With respect to spousal support, the judge found that despite the husband's prior work history, he was not voluntarily unemployed and he was unable to provide spousal support to the wife. The judge further found that the wife had no present earning capacity, due to the amount of time she had been out of the workforce and due to her "significant health issues."

The judge found that the wife "was entitled to continue to receive the monthly support" temporarily ordered by a judge during the pendency of the divorce proceedings, which the husband failed to pay for a period of approximately nine months. The judge further found that, since the date of the master's report, the husband had increased the equity value of the marital home (which was ultimately awarded to him) by "us[ing] marital assets to pay" the mortgage, thereby entitling the wife to one-half of the principal payments made during that period.

The husband finds flaws in the master's calculations underlying the division of the 401(k), the first judge's decision to allocate fifty-five percent rather than fifty-three percent thereof to the wife, and the second judge's calculations regarding the Nationwide annuity. We discern no reversible error or abuse of discretion. "Mathematical precision is not required of equitable division of property." Ross v. Ross, 50 Mass. App. Ct. 77, 81 (2000), quoting from Fechtor v. Fechtor, 26 Mass. App. Ct. 859, 861 (1989).

The husband's request for appellate attorney's fees is denied.