NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-641

CYNTHIA B. MACKENZIE

vs.

ANN C. GAUGER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Cynthia B. MacKenzie and Ann C. Gauger began a committed relationship in 1992, married in 2004, and were divorced in 2021.  MacKenzie appeals from the divorce judgment, arguing error in the division of MacKenzie's pension.  We affirm.[1]

---

[1] Despite Gauger's argument that this appeal warrants dismissal due to MacKenzie's failure to comply with Mass. R. A. P. 16 (b) (3), (4), (5), (6), (7), and (9), as appearing in 481 Mass. 1628 (2019), we exercise our discretion to reach the merits of the appeal.  See Mass. R. A. P. 2, as appearing in 481 Mass. 1603 (2019) (appellate court may "suspend the requirements or provisions of any of these rules in a particular case, on such reasonable terms as the court . . . may order"); Doten v. Doten, 395 Mass. 135, 140 (1985) ("dismissal of [an] appeal . . . is not mandatory, and we are free to consider whether equity requires that procedural flaws be overlooked").

Discussion. The equitable distribution statute, G. L. c. 208, § 34, grants a judge the ability to "assign to either [spouse] all or any part of the estate of the other," and lists the factors to be considered by the judge when doing so. G. L. c. 208, § 34. When reviewing a judge's division of property, we first review the findings to determine whether they accounted for all relevant factors under § 34, and no irrelevant factors. See Ravasizadeh v. Niakosari, 94 Mass. App. Ct. 123, 126 (2018). Next, we determine whether the rationale underlying the judge's conclusions is apparent in the findings and rulings. See Adams v. Adams, 459 Mass. 361, 371 (2011). If these criteria are met, we will affirm the judgment unless it is "'plainly wrong' or 'excessive.'"[2] S.S. v. S.S., 104 Mass. App. Ct. 633, 639 (2024), quoting D.B. v. J.B., 97 Mass. App. Ct. 170, 177 (2020).

We have no reservations about affirming the judgment at issue here. When dividing the marital estate, the judge thoughtfully considered the length of the parties' marriage and premarital committed relationship; the conduct of the parties during the marriage and its dissolution; the present and future needs of the parties' child; and other statutory factors,

---

[2] Our cases sometimes use "and" rather than "or" in this formulation. See, e.g., Adams, 459 Mass. at 371. Because, as we discuss, infra, the judgment here was neither wrong nor excessive, we would affirm in this case whether the "and" wording or the "or" wording applied.

2

including the parties' ages, health statuses, "station[s],"
occupations, incomes, vocational skills, employability, estates,
future opportunities, and liabilities and needs.[3]  See G. L.
c. 208, § 34.  The judge also considered the parties'
contributions in the acquisition, preservation, or appreciation
in value of their respective estates, and their contributions as
homemakers to the family unit.  See id.  It is therefore
apparent that the judge considered all § 34 factors and no
irrelevant ones when dividing the marital estate.  See id.;
Adams, 459 Mass. at 371; Ravasizadeh, 94 Mass. App. Ct. at 126.

Additionally, "[a] party's estate for purposes of equitable
division under G. L. c. 208, § 34, 'includes all property to
which a party holds title, however acquired,'" Pfannenstiehl v.
Pfannenstiehl, 475 Mass. 105, 110 (2016), quoting Williams v.
Massa, 431 Mass. 619, 625 (2000), and may include property
acquired before that party's marriage.  See Baccanti v. Morton,
434 Mass. 787, 792 (2001); Moriarty v. Stone, 41 Mass. App. Ct.
151, 158 (1996).  Thus, even though MacKenzie joined her pension
fund before her marriage to Gauger,[4] we discern no error or abuse

---

[3] The judge did not award alimony, and so did not consider
it in her decision.  See G. L. c. 208, § 34.  Neither party
challenges the judgment on this basis.

[4] We assume that, as MacKenzie argues on appeal, her pension
also vested before the parties married.

3

of discretion in the judge's decision to include the entirety of that pension in her calculation of the couple's marital estate.[5]

We are likewise unpersuaded that the judgment was inequitable, "plainly wrong," or "excessive." S.S., 104 Mass. App. Ct. at 639. "Once [a] judge decides to include premarital assets as part of [a marital] estate, [the judge] has considerable discretion in determining how to divide the assets equitably." Baccanti, 434 Mass. at 792. Moreover, when

_____

[5] We likewise are not persuaded that the judge's decision to include MacKenzie's entire pension in the couple's marital estate "punished . . . [MacKenzie] for a same sex relationship," as MacKenzie argues on appeal. The question whether assets obtained before marriage may be treated as part of a marital estate upon divorce is not rare, see, e.g., Rice v. Rice, 372 Mass. 398, 400 (1977), and such assets are routinely included in the marital estates of heterosexual couples, see Adams, 459 Mass. at 379-380; Baccanti, 434 Mass. at 792-793; Moriarty, 41 Mass. App. Ct. at 157-158. To the extent MacKenzie argues that the judge failed to consider extra costs MacKenzie incurred supporting Gauger when the parties were in a committed relationship but unable to avail themselves of the legal and financial benefits of marriage, see Obergefell v. Hodges, 576 U.S. 644, 681 (2015); United States v. Windsor, 570 U.S. 744, 774-775 (2013); Goodridge v. Department of Pub. Health, 440 Mass. 309, 344 (2003), the record suggests otherwise. The judge acknowledged that, before the parties married, MacKenzie "arranged . . . to have Ms. Gauger covered as her domestic partner under her employer's medical insurance plan," thereby taking on a financial burden. The judge also found that the parties married immediately after obtaining the right to do so, demonstrating that MacKenzie did not continue to take on this financial burden when there was a legal alternative available to her. By acknowledging these facts, the judge did consider the circumstances surrounding MacKenzie's premarital support of Gauger when calculating the couple's marital estate, and she applied the same standards that are applicable to all divorcing spouses.

4

dividing marital estates, judges are "not required to achieve financial parity between the parties." Zatsky v. Zatsky, 36 Mass. App. Ct. 7, 15 (1994), citing Cabot v. Cabot, 18 Mass. App. Ct. 903, 905 (1984). As reflected in the judge's decision here, when dividing the marital estate (and, by extension, the entirety of MacKenzie's pension), the judge considered how both parties contributed financially to the marriage. For example, the judge considered Gauger's contributions to the couple's homemaking and child rearing, but also considered Gauger's potential future inheritance, MacKenzie's role as the primary caretaker of the parties' child, and MacKenzie's financial support of Gauger while the latter pursued education. Notably, the judge also considered the fact that the parties were in a committed relationship when MacKenzie began her participation in the pension fund, and that MacKenzie indicated her intent to provide pension benefits to Gauger as early as 1998. The judge's discretionary division of MacKenzie's pension as part of the marital estate was therefore not "plainly wrong" or "excessive," S.S., supra, nor was it inequitable, particularly where the judge awarded Gauger only forty percent of the total pension benefit.

Finally, the fact that MacKenzie's pension is protected by ERISA does not impact this determination. It is true that the protections afforded by ERISA include antiassignment provisions,

5

see 29 U.S.C. § 1056(d)(1), but a qualified domestic relations order (QDRO) "provides an exception to the [anti-assignment] . . . provision[] of ERISA . . . by authorizing State courts to assign pension interests . . . when entering a judgment or order relating to marital property rights."  Early v. Early, 413 Mass. 720, 722 n. 3 (1992), citing 29 U.S.C. § 1056 (d)(3).  Thus, because MacKenzie's pension was assigned through a QDRO, it is not protected by the antiassignment provision of ERISA.  See Early, supra.  Contrary to MacKenzie's argument on appeal, nothing in Obergefell v. Hodges, 576 U.S. 644 (2015), or United States v. Windsor, 570 U.S. 744 (2013), suggests otherwise.

Judgment affirmed.

By the Court (Blake, C.J.,
  Shin & Hand, JJ.[6]),

*Paul Little*

Clerk

Entered:  March 10, 2025.

---

[6] The panelists are listed in order of seniority.