BARBARA A. EARLY vs. GERALD J. EARLY.

Plymouth. October 7, 1992. - December 9, 1992.

Present: LIACOS, C.J., NOLAN, LYNCH, & GREANEY, JJ.

*Divorce and Separation*, Division of property, Pension benefits, Alimony.
*Public Employment*, Retirement.

In a divorce proceeding the judge properly included the present value of
the husband's public employee pension rights in the marital estate sub-
ject to division pursuant to G. L. c. 208, § 34 [723-726], and the
judge's award of marital assets and alimony to the wife was neither
plainly wrong nor excessive [726-729].

COMPLAINT for divorce filed in the Plymouth Division of
the Probate and Family Court Department on October 2,
1989.

The case was heard by *Sumner Z. Kaplan*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Frank J. McGee* for Gerald J. Early.

*Carol A. Witt* for Barbara A. Early.

GREANEY, J. Barbara A. Early (wife) filed a complaint in
the Probate and Family Court seeking to terminate her
twenty-seven year marriage to Gerald J. Early (husband).
Following a trial, a judgment of divorce nisi was entered
which included an order, pursuant to G. L. c. 208, § 34
(1990 ed.), for division of the two principal marital assets,
the marital home and the husband's pension rights, in a ratio
of sixty per cent to the wife and forty per cent to the hus-
band. The judgment also ordered the husband to pay $200
per week in alimony to terminate upon the happening of spe-
cific contingencies, including the wife's receipt of benefits
from the husband's pension plan when the husband retires.
The husband has appealed claiming that the judge lacked

authority to include his public employee pension rights in the division of marital property, and that the division of property and award of alimony were plainly wrong and excessive. We transferred the case to this court on our own motion and now affirm the judgment as corrected.

The following are the pertinent facts. The parties were married in 1962. At the time of trial in November, 1990, the wife was fifty-six and the husband fifty-one. The couple has one child, a daughter, nineteen years of age. Although the daughter was emancipated, she lived with her mother and did not contribute towards room or board. The long term marriage fell apart as a result of the husband's distrust of the wife and infidelity on the husband's part.

The marriage had been a traditional one. The husband, a parole supervisor and twenty-five year employee of the Commonwealth's parole board, provided the primary financial support throughout the marriage. At the time of the divorce, his gross salary was $821 per week. The husband has no significant health problems that will affect his ability to work until retirement expected at age sixty-five. The wife has a ninth grade education. She held a factory position prior to the daughter's birth, and later held various clerical positions. The wife also has a real estate sales license, but worked as an agent for about six months in 1982, and sold only one house during that time. Following her unsuccessful attempt at a career in real estate, the wife began a business selling household products by arranging living room home shows. She was engaged in this manner at the time of the trial, earning an average of no less than $150 per week. The wife suffered various minor health problems and a long term inner ear problem which affects her ability to operate a motor vehicle. Despite her medical condition and extremely limited opportunities for employment, the wife could work in entry level clerical jobs and earn more than $150 per week until age sixty-five. The judge found that both parties contributed to the marriage and to the middle class style of living they enjoyed.

Except for the marital home and husband's pension rights under the Commonwealth's public employee retirement system, the couple had no significant assets and neither party could expect any inheritance. The fair market value of the marital home was $139,400, and the home was subject to a $15,500 mortgage which the wife had been paying since the husband moved out. Based on an exhibit to which both parties stipulated, the judge found that the present value of the husband's pension interest was $196,174.[1] The decision to divide the value of the home and pension in a ratio of sixty per cent to the wife and forty per cent to the husband was based on the judge's finding that, because of her limited earning capacity, physical condition, and expected Social Security benefits upon retirement of only $106 per week, the wife's future needs far outweighed the husband's.

In fashioning his order, the judge took the combined values of the house and the husband's pension ($335,574),[2] and applied the sixty-forty ratio to award $201,344 to the wife and $134,230 to the husband. Because the value of the house was not sufficient to satisfy the wife's share, the judge determined that the wife should be assigned a portion of the husband's pension interest. The remaining asset value owed to the wife, $61,944, amounted to 31.6 per cent of the present value of the husband's pension. The judge entered a qualified domestic relations order (QDRO),[3] directing the plan admin-

---

[1] In keeping with the stipulation, neither the husband nor the wife contests the judge's finding with respect to the valuation of the husband's pension. The exhibit was prepared by an expert with experience in the calculation of pension values.

[2] The judge used the gross value of the house and did not reduce the value to reflect the mortgage liability. It is apparent that he used this value because the wife, who was given responsibility for payment of the mortgage, had savings which approximated the mortgage liability which were not included in the property division.

[3] The term QDRO derives from the Retirement Equity Act of 1984 (Act), Pub. L. No. 98-397, § 104, 98 Stat. 1433 (1984). See *Dewan* v. *Dewan*, 399 Mass. 754, 758 n.4 (1987). The Act provides an exception to the anti-assignment and anti-alienation provisions of ERISA and the Internal Revenue Code by authorizing State courts to assign pension interests by means of a QDRO when entering a judgment or order relating to

istrator of the husband's pension to establish a separate account for the wife and to transfer to that account 31.6 per cent of the husband's interest in his pension as of the date of the divorce. Although the wife's account is separate and distinct from the husband's, a major purpose of the QDRO was to provide the wife with support when the payment of alimony ceases.

1. *Public pension rights.* We reject the husband's argument that the judge lacked authority to include his public pension interest in the marital estate for purposes of division under G. L. c. 208, § 34. That statute expressly includes as part of the marital estate all vested and unvested retirement benefits, see *Feathler* v. *Feathler*, 33 Mass. App. Ct. 924, 924 n.1 (1992), and makes no distinction between public and private pensions.[4] The judge found that the husband's pension interest, like the marital home, had been acquired during the marriage, and that both parties were entitled to a

---

marital property rights, alimony or child support. See 29 U.S.C. § 1056 (d)(3) (1988). We recognize that the Act expressly does not apply to government pension plans. See 29 U.S.C. § 1003 (b)(1) (1988). The use of a domestic relations order issued pursuant to G. L. c. 208, § 34, which has been called a QDRO, is likewise permitted to assign pension interests in the Commonwealth's retirement system in the same manner as the QDRO described in the Federal statute. See *Contributory Retirement Bd. of Arlington* v. *Mangiacotti*, 406 Mass. 184 (1989).

[4]General Laws c. 208, § 34, was amended in 1990 (prior to the judgment in this case) to incorporate the principles regarding pensions previously recognized in the decisional law. See *Dalessio* v. *Dalessio*, 409 Mass. 821, 826 (1991); *Dewan* v. *Dewan, supra* at 755-757. The statute provides, in part, as follows:

"Upon divorce or upon a complaint in an action brought at any time after a divorce, whether such divorce has been adjudged in this commonwealth or another jurisdiction, the court of the commonwealth, provided there is personal jurisdiction over both parties, may make a judgment for either of the parties to pay alimony to the other. *In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retirement benefits*, military retirement benefits if qualified under and to the extent provided by federal law, *pension*, profit-sharing, annuity, deferred compensation and insurance" (emphasis added).

divided share in accordance with their future needs. It was clearly within the judge's discretion to include the present value of the husband's public pension interest in the marital estate which was subject to the division unless that action was precluded by law.

The husband points to G. L. c. 32, § 19 (1990 ed.), and argues that the assignment is invalid thereunder. Section 19, which is quoted in part in the margin,[5] allows assignments of public pension rights only in certain situations. We are concerned with the last paragraph of the statute concerning an assignment to satisfy a support order under G. L. c. 208.

In *Contributory Retirement Bd. of Arlington* v. *Mangiacotti*, 406 Mass. 184 (1989), we held that § 19 permitted a public employee to assign a portion of his pension pursuant to a marital separation agreement which was supported by a court order under G. L. c. 208, § 34, calling for the division of marital assets. We rejected the position of the board, which asked us to read "the last paragraph of § 19 narrowly and literally so as to permit an assignment of public pension rights to satisfy a support order under G. L. c. 208 but not an assignment of such rights as a division of property

---

[5]"No assignment of any right in or to any funds, annuities, pensions or retirement allowances under any system shall be valid except such assignment as may be made for the purpose of making restitution in the case of dereliction of duty by any member as set forth in section fifteen, and except such assignment made in writing by a retired member, authorizing the board to withhold each month such amount as he may designate for the payment of subscriber premiums applicable to a hospitalization, medical and surgical insurance, or to a life insurance, in effect with a nonprofit hospital and medical service corporation or insurance company at the time of his retirement, and except such assignment made in writing by a retired member authorizing the board to withhold each month such amount as he may designate for the payment of income taxes levied under the Internal Revenue Code of the United States or the General Laws of the commonwealth. . . .

"Nothing in this section shall prevent a member's annuity pension or a retirement allowance from being attached, taken on execution, assigned, or subject to other process to satisfy a support order under chapter two hundred and eight, two hundred and nine, or two hundred and seventy-three."

The last paragraph of the statute was added in 1981 by St. 1981, c. 428, § 1.

under G. L. c. 208." *Id.* at 186. With respect to that paragraph, we stated the following: "Matters of support and the division of property are so closely interrelated under G. L. c. 208, § 34, that it is difficult to see why they should be treated differently when considering the assignability of public pension rights. The board's construction of [the last paragraph of § 19] could hinder the equitable resolution of agreements and court orders for alimony and property division, particularly when pension rights are the major marital asset. Moreover, because most pensions are earned by men, the board's construction of § 19 would burden former wives more than former husbands, a result the Legislature was not likely to have intended." (Footnote omitted.) *Id.* at 186. We concluded that "the general intention of the Legislature in enacting the 1981 amendment to § 19 was to facilitate the resolution of the financial aspects of divorce." *Id.*

While we did not deal in *Mangiacotti* with the question presented here, see *id.* at 186 & n.5, we can perceive no good reason why this assignment is prohibited by § 19, as that statute has been explained in the *Mangiacotti* case. The assignment was necessitated by the lack of assets in the marriage to complete an adequate equitable division, was made in the context of such a division under G. L. c. 208, § 34, and was intended to provide support for the wife when the husband's alimony obligation ceased. The assignment, therefore, fairly comes within the language of the last paragraph of § 19, because it sets aside a portion of the husband's pension interest to satisfy an obligation of marital support. Further, the entry of the QDRO had the added benefit of providing for an "immediate settlement of the pension distribution problem" and relieving the court of any further supervision with regard to the husband's pension. See *Dewan* v. *Dewan*, *supra* at 757. We conclude that the assignment in this case is lawful under § 19.

Finally, we reject the husband's argument that the method used by the judge to determine the assignment was improper. A judge may assign pension benefits "either as a present assignment of a percentage of the present value of the future

pension benefits or as a percentage of the pension benefits attributable to the marriage if and when the benefits are actually received." *Dewan* v. *Dewan, supra* at 755. The first method is preferred because it provides for an immediate settlement. This method is customarily employed when there is a known present value of the pension, and the spouse with the pension has sufficient available assets to buy out the interest of the other spouse in the pension. The award of pension benefits "if and when received," on the other hand, avoids the difficult problem of determining the present value of the pension as well as the practical problem presented when there are insufficient assets to divide the present value of the pension benefits. See *id.* at 756-757. See also 2A Kindregan & Inker, Family Law & Practice § 1046 (1990).

At first glance, the assignment here appears to combine the two methods. In substance, however, the preferred method was used. The wife essentially was assigned a sixty per cent interest in the marital home and a sixty per cent interest in the present value of the husband's pension. Because the husband did not have sufficient assets available to pay the wife immediately for her assigned interest in the pension, the judge made an actual present assignment of 31.6 per cent of his pension interests. That amount has been segregated for her to be used in the future when the husband no longer pays alimony. The use of a QDRO provided the judge with a flexible tool which allowed for the immediate division of the pension while dealing with the problem of insufficient assets to complete the division. Rather than being improper, this approach was sensible and fair in the circumstances.

*2. Division of marital property and alimony.* In challenging the judge's division of property and award of alimony, the husband claims that the judge erred in concluding that the wife's future needs far outweighed his own. The husband particularly complains that the judge did not properly consider the wife's future earning potential or her evasiveness concerning her past earnings. He also contends that his current take home pay is insufficient to cover both his weekly expenses and the $200 per week alimony order.

General Laws c. 208, § 34, confers broad discretion on a judge in awarding alimony and making an equitable property division. *Pare* v. *Pare*, 409 Mass. 292, 296 (1991). *Drapek* v. *Drapek*, 399 Mass. 240, 243 (1987). The judge's order must be accompanied by express findings which indicate that all relevant factors under § 34 have been fairly considered. See *Rice* v. *Rice*, 372 Mass. 398, 402-403 (1977). "The weight to be accorded each of the § 34 factors in a particular case is committed to the judge." *Ross* v. *Ross*, 385 Mass. 30, 37 (1982). If the reasons for the judge's conclusions are apparent in his decision, his determinations as to alimony and property division may not be reversed unless "plainly wrong and excessive." See *Redding* v. *Redding*, 398 Mass. 102, 107 (1986); *Ross* v. *Ross*, *supra* at 37-38; *Bianco* v. *Bianco*, 371 Mass. 420, 422-423 (1976).

The judge's findings of fact show that he considered all factors relevant under G. L. c. 208, § 34. His conclusion that the wife's future needs considerably outweighed the husband's was based almost entirely on the parties' disparate earning capacities and expected retirement benefits. The judge took into account that the wife's employability was extremely limited due to her advancing age and lack of education and skills. Contrary to the husband's argument, the judge need not have considered the wife's real estate license as a potential source of income since she had been singularly unsuccessful in the real estate field. Further, the judge fairly considered that the wife was "somewhat obfuscatory and less than candid" about her earnings. Although the wife testified that she earned only $83 per week, the judge found that she had average weekly earnings of no less than $150 per week. Despite the finding that the wife was capable of earning more, it was nevertheless apparent that the wife could not approach the earning capacity of the husband. Moreover, following retirement the husband could expect to receive no less than $543 per week, while the wife could expect to receive only $106 per week. We cannot say that the judge erred in concluding that the wife's future needs outweighed the husband's.

In challenging the $200 per week alimony award, the husband does not contend that the wife does not need the economic support, but claims that the alimony payment will leave him in a position of poverty. From his gross weekly salary of $821 per week, the husband takes home approximately $580. Without the alimony payment (which is the same amount the husband had been paying for child support prior to the divorce), the husband has expenses of $390 per week. These expenses include $112 attributable to rent due to his mother which the judge found he is not under compulsion to pay. In view of the Federal tax benefit associated with the payment of alimony, the husband is able to pay $200 per week alimony without falling into a position of poverty. The wife, on the other hand, has gross income of approximately $150 per week and expenses of approximately $500 per week. Without alimony, the wife would be placed in a very precarious financial position. The judge properly evaluated the current support needs of both parties in determining the alimony, and the amount ordered was neither plainly wrong nor excessive.

Finally, the husband claims that the over-all judgment is unfair because the wife received the marital home, which may be sold or borrowed against, a share of his pension, and alimony. He argues that the pension and the marital home are different types of assets and that the comparison of their value on a dollar for dollar basis led to an excessive award to the wife. While there is a difference between the liquidity of assets such as real estate and a pension (which may be considered by a judge in making an equitable division under G. L. c. 208, § 34), we are not persuaded that the judge abused his discretion. The goal in this case, as in most divorce cases, was to try to maintain the living standard of the parties as it was during the marriage. See *Feathler* v. *Feathler*, 33 Mass. App. Ct. 924, 925 (1992). This task was made more difficult by the parties' limited assets and future earning capacities. The division of property and alimony award were carefully structured to provide fairly for both the present and the future needs of both parties. See *Andrews* v.

*Andrews*, 27 Mass. App. Ct. 759, 761 (1989). While the wife will have the benefit of a stable living situation, the husband will have the benefit of greater monthly income both before and after retirement. Furthermore, unless there arises a material change in circumstances, the husband will be relieved of his alimony obligation following retirement. We are satisfied that the orders do not reflect an abuse of discretion.

The corrected judgment of divorce nisi is affirmed.

*So ordered.*