BARBARA A. EARLY *vs.* STATE BOARD OF RETIREMENT.

Plymouth. April 5, 1995. - July 24, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, & O'CONNOR, JJ.

*Public Employment*, Retirement. *Retirement. Divorce and Separation*, Division of property.

The State Board of Retirement was without authority under G. L. c. 32 to create a retirement account for a nonmember of the retirement system, and accordingly, an order of a Probate Court judge entered pursuant to G. L. c. 208, § 34, directing the apportionment of a State employee's accrued retirement benefits in such a manner was not enforceable. [838-841]

A divorce matter was remanded to the Probate and Family Court for further consideration of the implementation of the allocation of one spouse's accrued State retirement benefits to the other spouse, who was not a member of the retirement system, in light of St. 1993, c. 442. [841-842]

CIVIL ACTION commenced in the Plymouth Division of the Probate and Family Court Department on April 14, 1993.

The case was reported to the Appeals Court by *Catherine P. Sabaitis*, J. The Supreme Judicial Court granted an application for direct appellate review.

*Carol A. Witt* for the plaintiff.

*Eric A. Smith*, Assistant Attorney General, for the defendant.

ABRAMS, J. After a marriage of more than twenty years, the plaintiff, Barbara A. Early, divorced her husband, Gerald J. Early, in 1991. The judgment of divorce included a qualified domestic relations order (QDRO), pursuant to G. L. c. 208, § 34 (1994 ed.), dividing the two major marital assets — the marital home and the husband's public employee pension rights accrued until the date of the divorce judgment — according to a sixty-forty ratio in favor of the plaintiff. In

dividing the pension benefits, the QDRO indicated that the State Board of Retirement (board) was to establish a separate account for the plaintiff, who was not a public employee, within the State employee retirement system (system). The account was to be independent of the former husband's existing account and was to consist of the then present value of 31.56 per cent of the former husband's accrued benefits. The plaintiff's eligibility for the benefits allocated to her independent account was not tied to her former husband's eligibility to collect his remaining pension benefits.

The former husband appealed the divorce judgment to the Appeals Court, on the ground, inter alia, that the trial judge lacked authority to include his accrued public employee pension rights in the division of marital property under the last paragraph of G. L. c. 32, § 19 (1994 ed.).[1] We accepted the case for direct appellate review. See *Early* v. *Early*, 413 Mass. 720 (1992). We held that the award of 31.56 per cent of the husband's interest in the pension account "fairly comes within the language of the last paragraph of § 19, because it sets aside a portion of the husband's pension interest to satisfy an obligation of marital support." *Id.* at 725. See also G. L. c. 208, § 34.[2] We also stated that "[i]t was clearly within the judge's discretion to include the present value of the husband's public pension interest in the marital

---

[1]The last paragraph of G. L. c. 32, § 19 (1994 ed.), provides: "Nothing in this section shall prevent a member's annuity pension or a retirement allowance from being attached, taken on execution, assigned, or subject to other process to satisfy a support order under [c. 208, 209, or 273]."

[2]General Laws c. 208, § 34 (1994 ed.), provides in relevant part: "Upon divorce or upon a complaint in an action brought at any time after a divorce . . . the court of the commonwealth, provided there is personal jurisdiction over both parties, may make a judgment for either of the parties to pay alimony to the other. In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retirement benefits, military retirement benefits if qualified under and to the extent provided by federal law, pension, profit-sharing, annuity, deferred compensation, and insurance."

estate which was subject to the division *unless that action was precluded by law*" (emphasis supplied). *Early, supra* at 724.

Before our decision in *Early, supra,* the plaintiff's counsel forwarded the trial judge's QDRO to the board with a request that the board implement the trial judge's order to create a separate account for the plaintiff consisting of 31.56 per cent of the former husband's accrued benefits. The board refused to implement the QDRO on the grounds that it lacked authority, under G. L. c. 32 (1994 ed.), to establish a separate account for the plaintiff and that the dollar value of the former husband's pension benefits was not determinable until the date of his retirement.

The plaintiff then filed a complaint seeking declaratory relief against the executive director of the board. The board filed an answer restating its position that (1) G. L. c. 32 did not authorize establishment of a separate account for individuals not members of the system; (2) G. L. c. 32 permitted payment to nonmembers with derivative rights to a State employee's benefits only when the member State employee is entitled to the benefits under G. L. c. 32; and (3) the plaintiff is not a member of the system. Gerald Early was joined as a necessary party. The trial judge then allowed the parties' joint motion to reserve and report the case, pursuant to G. L. c. 231, § 111 (1994 ed.), and Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We allowed the defendant's application for direct appellate review.

I. *Validity of court-ordered nonmember account.* In *Early, supra,* we established that the pension benefits of the former husband, who is a public employee, were properly included as marital property divisible under G. L. c. 208, §§ 1 et seq. (1994 ed.). See *Contributory Retirement Bd. of Arlington* v. *Mangiacotti,* 406 Mass. 184 (1989). The issue raised on appeal by the board is whether it can be compelled to implement the assignment of a portion of those benefits as

instructed in the QDRO.[3] The board contends that in order
to implement the QDRO it would have to make the plaintiff,
who is not a public employee, a member of the system with
an independent account, an action which is beyond the scope
of its statutory authority. We agree. Because implementation
of the QDRO would require the board to establish an ac-
count in the system for a nonmember, we hold that the board
cannot implement the QDRO as originally issued.

The ability of the board to create accounts or award bene-
fits within the system is limited to statutory authorization.
See G. L. c. 32, §§ 1 et seq. See also *Boston Retirement
Bd.* v. *McCormick*, 345 Mass. 692, 695-697 (1963) (inter-
preting certain sections of G. L. c. 32 to prohibit payment of
benefits by the board to members of retirement systems ab-
sent express statutory authorization). General Laws c. 32
defines a "member."[4] The crux of the definition is that a
member is an *employee* of any one of a number of public
bodies and included in various retirement systems. The plain-
tiff is not and never was a public employee. The board can-

_____

[3]The QDRO provides in pertinent part: "The Plan Administrator shall
forthwith establish a separate account under the Retirement Program for
the Alternate Payee (the 'Alternate Payee's Account'), to be administered
as the account of a member in the Retirement Program, in accordance
with the provisions thereof. The initial balance in the Alternate Payee's
Account shall be established as of January 8, 1991, by the assignment,
effective as of said date, of [31.56%] of the interest of the Member in the
Retirement Program as of said date. From and after the establishment of
the Alternate Payee's Account, the Alternate Payee's Account shall be ad-
ministered under the Retirement Program as an account separate and dis-
tinct from the Member's account thereunder. All payments to be made to
the Alternate Payee under the terms of this Order or under the provisions
of the Retirement Program shall be made only from the Alternate Payee's
Account and only as otherwise permitted under the provisions of the Re-
tirement Program. Nothing contained in this Order shall be construed as
requiring or permitting any payments to be made to or for the benefit of
the Alternate Payee from any source other than the Alternate Payee's Ac-
count, or as requiring or permitting any assignment of any of the Mem-
ber's rights, title, or interest in or to the Retirement Program or any por-
tion thereof except as expressly set forth in this paragraph 2."

[4]General Laws c. 32, § 1, provides in relevant part: " 'Member', any
*employee* included in the state employees' retirement system, in the teach-
ers' retirement system . . . " (emphasis added).

not by administrative fiat, nor pursuant to a judicial order, expand the provision in G. L. c. 32, § 1, defining a member. See *Commissioner of Revenue* v. *Marr Scaffolding Co.*, 414 Mass. 489, 493 (1993) ("An administrative agency has no inherent or common law authority to do anything. An administrative board may act only to the extent that it has express or implied statutory authority to do so").

However, the board's authority to award benefits is not limited to members. The board is authorized to award benefits to beneficiaries. General Laws c. 32, § 1, defines "beneficiary" as one "entitled to [a] present or potential benefit on account of membership of a person other than [herself]." Under G. L. c. 32, § 3 (1) (*b*), "[a] beneficiary shall not be deemed to be a member of the system . . . ." Just as the board cannot make a nonemployee a member for the purposes of establishing an account absent statutory authorization, it cannot distribute benefits to a nonmember, except as authorized by statute. See *Commissioner of Revenue* v. *Marr Scaffolding Co.*, *supra*.

General Laws c. 32, § 19, specifically authorizes assignment of a member's interests in the retirement system in the division of marital property under G. L. c. 208. The board contends that the creation of an independent account for the plaintiff in the amount of 31.56 per cent of the former husband's accumulated benefits, as ordered by the Probate Court judge, is not an assignment of the former husband's interest, but rather the creation of a new interest. The plaintiff concedes as much, explaining that the " 'account' which is sought on behalf of the plaintiff, Barbara Early, is actually a separate interest in the benefit due Gerald Early upon his retirement, rather than a share of his accumulated employee contributions which are maintained in a separate account for him."

In order to assign or otherwise share pension benefits with a nonmember, a member of the system can elect certain options at the time he becomes eligible to begin receiving benefits. G. L. c. 32, § 12. Because the plaintiff is not a member of the system, and because the separate account which the

plaintiff seeks to have implemented pursuant to the QDRO is not an "assignment" of pension benefits of the former husband, but rather requires the creation of a new interest, the QDRO requires the board to take action outside its statutory authority and to that extent is not enforceable.

II. *Implementation.* The system is a contributory defined benefit system. Members of the system make periodic contributions into an annuity account during the course of their employment with the State. See G. L. c. 32, § 22 (1). The individual account of each contributing member is a record of the amount of the individual member's contributions to the system. See G. L. c. 32, § 22 (6) (*b*). In the event a member terminates employment with the State prior to becoming eligible to receive retirement benefits, he can seek a refund of the amount of contributions plus interest. However, if an employee maintains employment until becoming eligible to collect retirement benefits, the amount of benefits is not tied to the dollar value of his account, but rather is dependent on a number of variables not determinable until the date of eligibility, see G. L. c. 32, §§ 5-7 (1994 ed.), as well as the options he elects on retirement, see G. L. c. 32, § 12.

The board contends that it cannot presently implement the QDRO not only because the plaintiff is a nonmember ineligible for an account in the system, but also because the dollar value of 31.56 per cent of the present value of Gerald Early's pension benefits accrued until the date of the divorce decree cannot be calculated until Gerald Early becomes eligible to begin receiving his pension benefits. In the board's view, under G. L. c. 32, any benefits accrued by one spouse in the system, allocated by a court under G. L. c. 208 to a nonmember spouse, must be pursuant to an "if and when received" order,[5] because valuation of the member spouse's benefits is determinable only when he is himself eligible to begin receiving benefits. Thus, the board argues that pres-

---

[5]An "if and when received" order is an order "dividing all the present assets and directs that the future recovery, if and when received, be divided according to a fixed formula." *Hanify* v. *Hanify*, 403 Mass. 184, 189 (1988).

ently it cannot create an account in a fixed dollar amount for the plaintiff, regardless of her nonmember status. According to the plaintiff, the Probate Court judge's intent that she benefit from the husband's retirement benefits accrued during their marriage should not be contingent, as they would be in an "if and when received" order, on death or remarriage of the employee spouse, or her own remarriage.

While the method of implementing the division of marital property determined by the original Probate Court judge is first for the court on remand, we note that § 12 of c. 32 was amended subsequent to the 1991 divorce proceedings. The amendments allow a former spouse, such as the plaintiff, to receive an irrevocable survivor beneficiary interest in the pension benefits of her former spouse, who is a member of the State employee retirement system. See G. L. c. 32, § 12, as amended through St. 1993, c. 442, effective April, 1994.

Although the QDRO as originally ordered by the Probate Court judge cannot fully be implemented by the board within the authority granted it under G. L. c. 32, the intent of the Probate Court judge (to ensure that the plaintiff would benefit from the retirement accrued by her former husband during their marriage) in dividing the marital assets under G. L. c. 208 should be effectuated to the extent permissible under c. 32, including consideration of the amendments to G. L. c. 32, § 12. This matter is remanded to the Plymouth Probate and Family Court for entry of a declaratory judgment consistent with this opinion. The Probate Court also should vacate the order of the Probate Court judge requiring the establishment of an independent account in the system and determine the method of implementation of the division of marital assets in accordance with this opinion.[6]

*So ordered.*

---

[6]The plaintiff's request for attorney's fees is denied. There is no statutory or constitutional basis for the plaintiff's request for attorney's fees.