## ROBERT W. TOMPKINS *vs.* DENISE M. TOMPKINS.

No. 04-P-1317.

Plymouth. June 3, 2005. - February 2, 2006.

Present: LAURENCE, DUFFLY, & KATZMANN, JJ.

*Divorce and Separation,* Separation agreement, Modification of judgment. *Contract,* Separation agreement, Mistake.

In an action by the husband challenging a judgment of divorce nisi over three years after it became final, based on an alleged error in a stipulated-to domestic relations order that was incorporated into the judgment, the husband could not avail himself of Mass.R.Dom.Rel.P. 60(a) or (b), where there was no mistake in the judgment, and where, to the extent he had a viable claim, it was untimely and constituted an impermissible collateral attack on the judgment. [491-493]

This court concluded that a domestic relations order, as stipulated to by the parties in a divorce action, was not, on its face, inconsistent with the provisions of the parties' separation agreement, and that together they formed a congenial whole, with the domestic relations order supplying specificity where required, as well as additional provisions omitted from the earlier agreement but necessary to a complete understanding of the parties' intentions regarding disposition of the husband's retirement benefits. [493-497]

COMPLAINT for divorce filed in the Plymouth Division of the Probate and Family Court Department on August 23, 1999.

A complaint for modification, filed on October 30, 2003, was heard by *Catherine P. Sabaitis,* J.

*Ann Wagner* for Denise M. Tompkins.

*John F. Garrity* for Robert W. Tompkins.

DUFFLY, J. Denise M. Tompkins appeals from a judgment of the Probate and Family Court revoking a domestic relations order entered over four years earlier that specified the bases upon which Denise's interest in her former husband's pension was to be determined.

*Background.* After thirty years of marriage, Robert W. and Denise M. Tompkins were divorced by a judgment of divorce

nisi dated December 6, 1999, which became absolute on March 6, 2000. A probate judge approved a separation agreement of the parties dated August 14, 1999, that was incorporated in the divorce judgment, but survived the judgment "as an independent contract." Within a provision allocating the parties' interests in their respective pensions is the following sentence, which forms the basis of the judge's action that is the subject of this appeal: "The HUSBAND and WIFE further agree that the HUSBAND shall, upon the execution of this Separation Agreement, consent to a Qualified Domestic Relations Order[1] by which 50% of his retirement benefits from the Hull Retirement System, accrued as of the date of this Separation Agreement, shall be allocated to the WIFE." Three months after the entry of the judgment nisi, the parties submitted a joint motion, prepared by Robert's attorney (Denise was not represented), requesting that the judge enter a domestic relations order (DRO) in the form attached to the motion and incorporated therein.[2] The motion further stated that the attached DRO was "pursuant to the terms of a Judgment of Divorce Nisi entered on December 6, 1999," providing that Denise "was to receive the sum equivalent to 50% from the husband's retirement plan." The proposed DRO attached to the motion had also been prepared by Robert's attorney.[3] The motion was allowed, and the judge, on May 17, 2000, issued a DRO in the form stipulated by the parties. The DRO provides

---

[1]Because the benefits at issue involve those in a municipal retirement system, the assignment of interests is pursuant to a domestic relations order (DRO) and not, strictly speaking, pursuant to a qualified domestic relations order (QDRO), as it is referred to in the parties' separation agreement. See *Early* v. *Early*, 413 Mass. 720, 722-723 n.3 (1992) ("The term QDRO derives from the Retirement Equity Act of 1984 . . . [, which] expressly does not apply to government pension plans. See 29 U.S.C. § 1003[b][1] [1988]"). That pension benefits of a State public employee may be the subject of a domestic relations order distributing marital property on divorce was established by *Contributory Retirement Bd. of Arlington* v. *Mangiacotti*, 406 Mass. 184, 186 (1989).

[2]The form appears to have been based on a sample order issued by the Massachusetts Teachers' Retirement Board, which in turn was based upon the holding of the Supreme Judicial Court in *Contributory Retirement Bd. of Arlington* v. *Mangiacotti, supra.*

[3]The DRO, as adopted by the judge, provides in relevant part in paragraph 5:

that it is "a part of the final Judgment in this matter."[4] Upon Robert's retirement three years later, on May 31, 2003, the parties began to receive their respective retirement checks. It is undisputed that checks received by Denise were calculated in accordance with the DRO that had been stipulated to by the parties.

By a complaint for modification filed October 30, 2003, Robert challenged, for the first time, the language in the DRO as inconsistent with the August 12, 1999, separation agreement. He also filed a motion seeking revocation of the judge's approval of the DRO and substitution of an amended DRO. In his affidavit in support of the motion, Robert asserts that Denise "should be receiving $641.69 per month and not $922.56," and that the language in the DRO is a "mistake" and that it "should have been written so that [Denise's] benefits were accrued up to the . . . date of divorce . . . per the separation agreement." In

"The Alternate Payee's Benefit shall be equal to 50% of the Marital Portion of the Participant's benefit commencing at the time of the Participant's actual retirement. The Marital Portion of the Participant's benefit is the benefit which the Participant would have received at his actual retirement date in the absence of this Order, determined using his highest consecutive three-year average salary at his actual retirement date and using the benefit percentage specified in the Retirement Plan for the age at which the Participant actually retires and commences receiving his benefit, but *using only his credited service under the Retirement Plan through December 6, 1999*" (emphasis added).

[4]General Laws c. 208, § 34, as amended through St. 1990, c. 467, provides in relevant part:

"Upon divorce or upon a complaint in an action brought at any time after a divorce, . . . the court[s] of the commonwealth . . . may . . .[,] [i]n addition to or in lieu of a judgment to pay alimony, . . . assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retirement benefits, military retirement benefits if qualified under and to the extent provided by federal law, pension, profit-sharing, annuity, deferred compensation and insurance."

As no separate complaint was filed, see Mass.R.Dom.Rel.P. 3 and 7, we construe the parties' joint motion as also seeking amendment of the judgment to incorporate the DRO. See *Contributory Retirement Bd. of Arlington* v. *Mangiacotti, supra* (authorizing assignment of public pension interest made pursuant to a marital separation agreement when "assignment is supported by a parallel court order entered under G. L. c. 208, § 34").

a conclusory paragraph, he states, "A mistake in the drafting of a later document [the DRO] that mistakenly did not reflect the agreement reached by the parties should not supersede the separation agreement regardless of whose attorney drafted the [DRO]."[5]

Thereafter, Denise filed a motion for summary judgment accompanied by her affidavit, in essence denying there was a mistake in the language of the DRO. So far as the record reflects, the parties did not file memoranda of law; the only submissions in support of the motions were the separation agreement, the parties' joint motion and attached DRO that had been made part of the final judgment, the parties' affidavits, and Robert's newly proposed DRO. Both motions were scheduled for hearing on the same day. On May 5, 2004, following the hearing, the judge denied Denise's motion by endorsement.[6]

A month later, on June 3, 2004, the judge allowed Robert's motion, issuing a judgment entitled "DECLARATION OF RIGHTS On Plaintiff's Motion for Revocation of Approval of [DRO]." It is apparent from the judge's rationale supporting the ruling that she viewed Robert's complaint as one seeking enforcement of an agreement, rather than one seeking modification of a judgment. Examining only the provisions of the August 14, 1999, separation agreement, and without considering the stipulated language in the proposed DRO that had been submitted to her in March, 2000, by the parties, the judge issued the declaration of rights, declaring that "[t]he date of the parties['] divorce, December 6, 1999, is the appropriate date to be used

---

[5]Robert submitted a revised DRO, proposing changes to paragraph 5 as follows:

> "The Alternate Payee's Benefit shall be equal to 50% of the Marital Portion of the Participant's benefit commencing at the time of the Participant's actual retirement. The Marital Portion of the Participant's benefit is the benefit which the Participant would have received *had he retired on December 6, 1999* in the absence of this Order, determined using his highest consecutive three-year salary *as of December 6, 1999* and using the benefit percentage specified in the Retirement Plan for his age *on December 6, 1999,* but using only his credited service under the Retirement Plan through December 6, 1999" (emphasis added).

[6]This was the same judge who had approved the DRO; she also had presided over the parties' divorce and had approved their separation agreement.

for all variables in the retirement allowance calculation." By this action, the judge revoked the DRO entered on May 17, 2000, that had become part of the divorce judgment. Denise appealed. For the reasons we shall discuss, we vacate the judgment.

*Discussion.* Although Robert's complaint and motion seek relief from the judgment, the judge's declaration of rights focuses on enforcement of the underlying separation agreement. Denise makes no claim of error as to the procedure by which the judge, sua sponte, decided Robert's motion as though he had presented a request for a declaration of the parties' present rights under the separation agreement.[7] We therefore consider whether Robert made a timely challenge to the judgment, as well as whether he has a viable alternative claim that the stipulations prepared by his attorney (as set forth in the joint motion and attached DRO) contain a mistake supporting rescission of

---

[7]In general, we have recognized that the proper administration of justice calls for the disposition in the Probate Court of all claims relative to the consequence of a separation agreement, even where some of those claims might properly be brought in the Superior Court. See *Ross* v. *Ross,* 371 Mass. 439, 442-443 (1976). In *Ross* v. *Ross,* the former wife filed a motion to dismiss the former husband's action in Superior Court, in which he sought specific performance of their surviving separation agreement after the Probate Court had entered a modification judgment that increased alimony. *Id.* at 440-441. The wife claimed that the consequences of the separation agreement had been raised, argued, and decided against the husband in the Probate Court. *Id.* at 442-443. The Supreme Judicial Court, exercising its general powers of superintendence of the courts, stated that "the proper administration of justice calls for the transfer of this case to the Probate Court . . . for disposition. The wife's claim that the husband's rights are foreclosed by the earlier determination can be considered there." *Id.* at 443.

Passing the question whether Robert properly raised the issue of mistake in the separation agreement, as a general matter, all claims relating to enforcement of the divorce judgment, including whether the separation agreement acts as a bar to its enforcement, are appropriately considered in the same action. See *Knox* v. *Remick,* 371 Mass. 433, 438 (1976) ("We believe that all aspects of the dispute between the former spouses should be resolved in one proceeding. If one spouse seeks modification of a support order so as to depart from the terms of the separation agreement, the other spouse should raise the availability of the separation agreement as a potential bar in the same proceeding"). See also *Krapf* v. *Krapf,* 439 Mass. 97, 104-109 (2003). Compare *Binder* v. *Binder,* 7 Mass. App. Ct. 751, 759 (1979) (limiting the reach of the foregoing language in *Knox* v. *Remick, supra,* to modifications seeking increased support that are "in violation of a contractual commitment not to do so").

the DRO's stipulated terms. We agree with Denise that Robert is barred from relief on either ground and that the DRO should not have been revoked.

1. *Correcting "error" in judgment.* Robert claims that he did not become aware of what he views to be a "discrepancy" between the terms of the separation agreement and the DRO until he retired in 2003 and began receiving payments, and that the "error" in the judgment may be "correct[ed] at any time under Rule 60(a) [or 60(b)(6)] [of the Massachusetts Rules of Domestic Relations Procedure]."[8]

Rule 60(a) "seeks to ensure that the record of judgment reflects what actually took place," Reporter's Notes to Mass.R. Civ.P. 60, 43B Mass. Gen. Laws Ann., Rules of Civil Procedure, at 331 (West 2002). "Rule 60(a) does not apply unless the mistake springs from some oversight or omission; it does not cover mistakes which result from deliberate action." *Id.* at 332. The DRO contains exactly the terms to which the parties had stipulated, and approval of the DRO was consistent with the parties' request, as set forth in their joint motion. There was thus no mistake in the judgment.

Moreover, although Robert claims he did not become aware of the "mistake" in the judgment until he began receiving

---

[8]We recognize that Robert cites to Mass.R.Civ.P. 60(a), 365 Mass. 828 (1974), and 60(b), 365 Mass. 828 (1974); however, because Robert is seeking to correct an error in a divorce judgment, we believe the governing rules to be Mass.R.Dom.Rel.P. 60(a) and 60(b), which are in any case identical to Mass. R.Civ.P. 60(a) and (b). See Mass.R.Dom.Rel.P.1.

Rule 60(a) of the Massachusetts Rules of Domestic Relations Procedure provides in relevant part:

"Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party . . . ."

Rule 60(b) of the Massachusetts Rules of Domestic Relations Procedure provides in relevant part:

"On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake . . . ; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reason[] (1) . . . not more than one year after the judgment, order or proceeding was entered or taken."

benefits three years later, any mistake was apparent on the face of the DRO. To the extent that Robert had a viable claim for relief from the judgment based on mistake, that claim could have been raised by a motion for postjudgment relief pursuant to Mass.R.Dom.Rel.P. 60(b)(1), but under that rule, the claim must have been made not more than one year after the DRO entered. Because the claim for relief is based on an asserted mistake in the DRO, Robert may not bring his claim under rule 60(b)(6), which by its terms is available only when the relief sought is "based upon some other reason than those stated in Rule 60(b)(1)-(5)." Reporter's Notes to Mass.R.Civ.P. 60, *supra* at 334. The importance of the finality of judgments that is embodied in rule 60(b) extends to judgments of divorce incorporating separation agreements. *Bracci* v. *Chiccarelli*, 53 Mass. App. Ct. 318, 323-324 (2001).

Robert's claim also fails because it constitutes a collateral attack on the judgment. See, e.g., *Pavlik* v. *Dmytryck*, 6 Mass. App. Ct. 915, 916 (1978) (action in Land Court was "impermissible collateral attack" on Probate Court judgment, even assuming Probate Court lacked authority to order conveyance of plaintiff's interest in land, where final judgment had entered and rights of parties were thus limited to timely appeal or other direct challenge to Probate Court judgment); *Levenson* v. *Feuer*, 60 Mass. App. Ct. 428, 441-442 (2004) (plaintiff, who neither appealed nor sought postjudgment relief from contempt judgment, could not collaterally attack judgment in a declaratory proceeding).

2. *"Mistake" in drafting the stipulated terms.* We next consider Robert's claim that the parties' proposed DRO, as prepared and submitted to the court in March, 2000, reflects a mistake that is apparent by comparing that document to the provisions of the earlier separation agreement, which he describes as the "central contract."[9]

Robert asserts, and we agree, that it is within the Probate Court's authority to declare the parties' rights under their separa-

---

[9]Robert rightly makes no argument in this appeal, and nothing in the record suggests, that his claim is one for mutual mistake. See *LaFleur* v. *C.C. Pierce Co.*, 398 Mass. 254, 257-258 (1986) (setting forth legal principles underlying doctrine of mutual mistake).

tion agreement, pursuant to G. L. c. 231A, see *Krapf* v. *Krapf,* 439 Mass. 97, 107 (2003), and to modify a divorce judgment so that it conforms to the judge's determination regarding the parties' respective rights under that agreement. See *id.* at 104, quoting from *Bell* v. *Bell,* 393 Mass. 20, 26 (1984), cert. denied, 470 U.S. 1027 (1985) (Abrams, J., dissenting) ("a separation agreement is a 'judicially sanctioned contract' that is valid and enforceable only if and as approved by the judge").[10] Here, however, the parties are receiving benefits pursuant to a DRO that is consistent with their written stipulations and is not unconscionable on its face.

Our review of the motion judge's interpretation of the parties' agreement is de novo. See *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1),* 424 Mass. 430, 443 (1997). When construing the separation agreement and stipulated terms of the DRO, we adhere to the established principle that all parts "are to be construed together as constituting a single and consistent arrangement. The intent of the parties must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part." *MacDonald* v. *Hawker,* 11 Mass. App. Ct. 869, 873 (1981), quoting from *Crimmins & Pierce Co.* v. *Kidder Peabody Acceptance Corp.,* 282 Mass. 367, 375 (1933). See *McMahon* v. *Monarch Life Ins. Co.,* 345 Mass. 261, 264 (1962); *G.M. Abodeely Ins. Agency* v. *Commerce Ins. Co.,* 41 Mass. App. Ct. 274, 277 (1996).

We first note that a DRO may only award benefits consistent with, and limited to, those authorized by statute. *Early* v. *State Bd. of Retirement,* 420 Mass. 836, 839, 841 (1995) (retirement system is a "contributory defined benefit system," and "if an

---

[10]In *Krapf* v. *Krapf,* 439 Mass. at 99-100, the parties' separation agreement awarded the wife fifty per cent of the husband's military pension, and a qualified order was consistent with this provision; the former husband retired and the parties began to receive benefits consistent with their agreement and the qualified order. Thereafter, the former husband took steps to maximize his disability benefits, which had the effect of divesting his former wife of her interest in his military pension, and she filed a declaratory judgment action under G. L. c. 231A. *Id.* at 100-101. The Supreme Judicial Court invoked basic contract principles to construe the term "pension rights with the U.S. Army" to mean that the plaintiff was entitled to "the totality of benefits due to the defendant on his retirement from the army." *Id.* at 105.

employee maintains employment until becoming eligible to collect retirement benefits, the amount of benefits is not tied to the dollar value of his account, but rather is dependent on a number of variables not determinable until the date of eligibility, see G. L. c. 32, §§ 5-7 [1994 ed.], as well as the options he elects on retirement, see G. L. c. 32, § 12").[11] There is no specific reference in the separation agreement to those variables that make up the eventual retirement benefit, but are not determinable until the date of eligibility, nor to the options that must be elected on retirement that also have an effect on the amount of the benefit. The relevant language in the separation agreement provides:

> "the HUSBAND shall, upon the execution of this Separation Agreement, consent to a [DRO] by which 50% of his retirement benefits from the Hull Retirement System, accrued as of the date of this Separation Agreement, shall be allocated to the WIFE. It is the intention of the parties that the administrator for the Hull Retirement System shall allocate said retirement benefits to the WIFE, but that said retirement benefits shall not be paid to the WIFE until the HUSBAND retires."

Nothing in the foregoing provision specifically addresses the

---

[11]As *Early* v. *Early*, 413 Mass. 720, 722 & n.1 (1992), makes clear, the trial judge's domestic relations order in that case provided that a separate account be created by the Board of Retirement for the wife consisting of "$61,944, amount[ing] to 31.6 per cent of the present value of the husband's pension," which was based on "valuation of the husband's pension . . . by an expert with experience in the calculation of pension values." The wife's separate account was not tied to her former husband's retirement eligibility. *Early* v. *State Bd. of Retirement*, 420 Mass. at 837. The board refused to implement the DRO, contending that the wife "is a nonmember ineligible for an account in the system, but also because the dollar value of 31.56 per cent of the present value of [the husband's] pension benefits accrued until the date of the divorce decree cannot be calculated until [he] becomes eligible to begin receiving his pension benefits," and therefore the DRO "must be pursuant to an 'if and when received' order, because valuation of the [husband's] benefits is determinable only when he is himself eligible to begin receiving benefits" (footnote omitted). *Id.* at 841. The order was vacated and the matter was remanded to the Probate Court. *Id.* at 842.

The question has not been raised, and we therefore do not address, whether the provisions in the DRO Robert now seeks to have the court adopt would be consistent with the requirements of the State's retirement system.

meaning of the phrase "retirement benefits . . . accrued as of the date of this Separation Agreement." It could, but does not necessarily, refer to all the variables that determine the amount of benefits upon retirement.[12] The generalities of the provision were given form in the parties' proposed DRO that was adopted by the judge.[13] With respect to the variables to be used in calculating Denise's fifty per cent interest, the parties' proposed DRO provided that the wife's benefit "shall be equal to 50% of the Marital Portion of the [husband's] benefit commencing at the time of the [husband's] actual retirement. The Marital Portion . . . is . . . determined . . . using only [the husband's] credited service under the Retirement Plan through December 6, 1999." Two other variables — the husband's age as of the date of retirement and his highest consecutive three year average salary — were calculated as of the date of the husband's actual retirement.

We conclude that the DRO, as stipulated to by the parties, is not, on its face, inconsistent with the provisions of the parties' separation agreement; together, they form a congenial whole, with the DRO supplying specificity where required, as well as additional provisions omitted from the earlier agreement but necessary to a complete understanding of the parties' intentions regarding disposition of Robert's retirement benefits. No mistake is apparent from the face of these documents.

To the extent that Robert's unhappiness with the DRO may be seen as a claim that it does not accurately reflect his understanding of the agreement, or that it is unfair, his claim comes too late. Cf. *O'Reilly's Case*, 258 Mass. 205, 208-209 (1927) (it is "well settled that, where a person capable of read-

---

[12]Whether Robert's highest consecutive three year average salary would be earned after the divorce, or whether he had already earned it by that date, could not be known until the date of his retirement; this is not a variable that accrues.

Robert also makes no claim that the reference to "accrued benefits" limits Denise to the individual contributions made by Robert to his annuity account as of December 6, 1999.

[13]The stipulated terms of the proposed DRO also included a number of important provisions not specifically provided for in the separation agreement, including election of option C, and the reduction in the amount of the wife's benefit by the husband's election of option B in the event of accidental disability retirement or the wife's remarriage.

ing and understanding a written instrument fails to acquaint himself with its contents before affixing his signature thereto and such failure is due to his own negligence, his ignorance of the force and effect of the instrument is not available as a basis for equitable relief by way of cancellation. . . . The mistake to warrant cancellation must not result from a want of due care and diligence; and it must be material to the transaction and not an incident or inducement to it"); *Barry* v. *Barry*, 409 Mass. 727, 732-733 (1991) (in the absence of fraud, coercion, or "showing that no judge has yet even implicitly considered the fairness and reasonableness of the separation agreement[,]" surviving provisions of the agreement "should at some time become free from question"; and where the agreement was not challenged "within a reasonable time after the entry of judgment [see Mass. R. Dom. Rel. P. 60(b)(6)], it [was] too late to claim that the agreement was not fair and reasonable").

*Conclusion.* The judgment dated June 3, 2004, is vacated. A new judgment shall enter stating that the domestic relations order dated May 17, 2000, shall remain in effect.

*So ordered.*