NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-609

PAMELA CYR & another[1]

vs.

KATHERINE L. SMITH.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This is an action initiated by Pamela Cyr and Joyce Holupka (plaintiffs) against their neighbor, Katherine L. Smith, concerning the interpretation of a side agreement executed at the time the plaintiffs sold the property at the heart of this dispute to Smith. We affirm.

The primary issue is whether, per the side agreement, the plaintiffs are entitled to an order requiring Smith to sell the property to them. Smith initially purchased the property from the plaintiffs, at which time she also signed the side

---

[1] Joyce Holupka.

agreement, on November 14, 2018.[2,3]  Around two and one-half

years later, on June 22, 2021, Smith informed the plaintiffs

that she was considering selling the property.  After multiple

discussions, on July 14, 2021, the plaintiffs formally offered

to purchase Smith's property for $2.8 million.  In the

alternative, the plaintiffs asked that, if Smith decided to

list, the plaintiffs be "allow[ed] . . . to meet the offer

[Smith] would accept -5%."  Smith declined the $2.8 million

offer and responded, "I will be putting the house on the market

at the end of July, and will add you to the exclusion list."  A

few days later, the plaintiffs hand-delivered a letter to Smith

asserting that they "intend[ed] to enforce [their] right to

purchase the [p]roperty," per the first paragraph of the side

agreement.  Smith never put the property on the market and

eventually decided not to sell it.

---

[2] According to the first paragraph of the side agreement, if Smith "decide[s]" to sell her property within a four-year period following December 1, 2018, the plaintiffs have the right to purchase it for $2.5 million plus one percent compound annual growth rate (as stated in the side agreement, purchase "at 1% CAGR (starting cost $2.5M as of Dec 1 2018)."  The second paragraph of the agreement states that if Smith "decide[s]" to sell her property after December 1, 2022, the plaintiffs have the right to purchase it "at 1% CAGR (starting cost $2.5M as of Dec 1 2018) or 5% below the best received offer if the property is marketed for sale -- whichever is lower."

[3] Both parties were represented by legal counsel throughout the negotiation of the purchase and sale agreement and the side agreement.

After trial, a judge of the Land Court concluded that the first paragraph of the side agreement represented a "right of first offer -- that Smith had an obligation to offer to sell [the property] to [the plaintiffs] for $2.5 million plus '1% CAGR' before she placed it on the market."[4]  He further reasoned that the plaintiffs' first offer -- to purchase the property for $2.8 million or to be given a right of first refusal at a price that was five percent less than Smith's highest offer -- represented a modification to the side agreement, and that Smith accepted this modification when she stated that she was going to put the house on the market and would add the plaintiffs to the exclusion list.  Therefore, the judge reasoned, Smith's decision to put the property on the market did not breach the side agreement.  The judge further concluded that the issue is now moot given that more than four years had passed since Smith bought the property, leaving the first paragraph of the side agreement inapplicable.

"The interpretation of a contract presents a question of law for the court, except to the extent disputed facts bear upon

---

[4] In addressing the plaintiffs' claim that the language of the side agreement compelled Smith to sell the property once she initially decided to put it on the market, irrespective of her subsequent change of heart, the judge concluded that "[t]his one-sided, draconian interpretation goes well beyond the language of the side agreement and is belied by the testimony of [the plaintiffs]."

3

such interpretation."  USM Corp. v. Arthur D. Little Sys., Inc.,
28 Mass. App. Ct. 108, 116 (1989).  Our review of the judge's
interpretation of the side agreement is de novo.  See Tompkins
v. Tompkins, 65 Mass. App. Ct. 487, 494 (2006).  Our de novo
review leads us to the same conclusion reached by the judge, and
we adopt his sound analysis in all respects, including his
determination that the parties remain bound by the terms of the
second paragraph of the side agreement.[5]

Judgment affirmed.

Appeal from order dissolving
  lis pendens dismissed as
  moot.

By the Court (Vuono, Henry &
  Wood, JJ.[6]),

Paul Little

Clerk

Entered:  June 24, 2025.

---

[5] Given our conclusion above, the plaintiffs' additional
argument regarding the dissolution of the lis pendens is moot
and requires no further discussion.  To the extent that we do
not address any remaining contentions, they "have not been
overlooked.  We find nothing in them that requires discussion."
Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

[6] The panelists are listed in order of seniority.

4