NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-413

COLYNE GERMAIN

vs.

KELLY A. GOODNEY GERMAIN[1] & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Colyne Germain, appeals from a judgment dismissing, with prejudice, her second amended complaint in equity filed in the Probate and Family Court.  We affirm.

Background.  Colyne[3] and Patrick Germain were divorced on February 27, 2001.  At that time, Patrick was a city of Worcester (city) firefighter.  Pursuant to the terms of an agreement which was incorporated into a judgment of divorce nisi, Patrick was to "assign to [Colyne] a 35% interest in his

---

[1] As is our custom, we take the names of the parties as they appear in the complaint.

[2] City of Worcester and Worcester Retirement Board.

[3] Because some of the parties share a surname, we use their first names to avoid confusion.

retirement plan."  To effectuate this provision, a domestic relations order (DRO), signed by Colyne and Patrick, was approved by a Probate and Family Court judge.  As relevant here, the DRO provided that "[t]he Alternate Payee recognizes that her claims to a death benefit under [G. L. c. 32, § 12 (2) (d)] may be defeated by those of a subsequent spouse of the Participant."[4] In addition, Patrick was to "maintain his existing life insurance policy through his City Retirement Plan naming [Colyne] as beneficiary."

Patrick married Kelly A. Goodney Germain[5] on September 10, 2006.  Patrick, while still an employee of the city, died on February 9, 2013.  Following his death, Kelly applied for and was granted accidental death benefits and member-survivor benefits by the Public Employee Retirement Administration Commission (PERAC) as Patrick's surviving spouse.  Kelly also received $205,000 from Patrick's life insurance policy through the city.

Colyne filed a second amended equity complaint against Kelly, the Worcester Retirement Board (board), and the city alleging unjust enrichment and seeking declaratory relief.  On

---

[4] The DRO defines Colyne as the alternate payee and Patrick as the participant.

[5] Kelly died on November 15, 2025; her estate did not participate in this appeal.

2

cross motions for summary judgment, the judge allowed the board's motion concluding that Colyne was not deprived of her statutory rights to Patrick's pension because the DRO included the possibility that her claim could be "defeated" by a subsequent spouse. The judge denied the motions concerning the life insurance proceeds concluding there was a factual dispute whether this obligation terminated upon the emancipation of Colyne and Patrick's children or was a marital asset.[6]

Following a trial on the issue of the disposition of the life insurance proceeds, the judge concluded that the parties' agreement was ambiguous and took extrinsic evidence to resolve the question. He concluded that the life insurance obligation was tied to Patrick's child support obligation, it terminated when the support obligation ended, and was not a marital asset subject to division. The judge entered a judgment of dismissal with prejudice, and this appeal followed.

Discussion. The pension. "We review a grant of summary judgment de novo." See Miller v. Cotter, 448 Mass. 671, 676 (2007). The question "is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a

---

[6] The judge also dismissed all counts with prejudice as to the city.

judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). Here, there are no material facts in dispute. Pursuant to their judgment of divorce, Colyne was awarded a thirty-five percent interest in Patrick's retirement benefit. However, the DRO provided that any preretirement death benefit to which Colyne had a claim could be defeated by Patrick's subsequent spouse. That is precisely what happened here. Patrick married Kelly in 2006, and died in 2013 while still employed by the city. Kelly exercised her spousal election right under G. L. c. 32, § 12 (2) (d) and applied for the accidental death benefit under G. L. c. 32, §§ 9 and 94.[7]

"[A] DRO may only award benefits consistent with, and limited to, those authorized by statute." Tompkins v. Tompkins, 65 Mass. App. Ct. 487, 494 (2006). Colyne contends that she "is entitled to thirty-five (35%) percent of Patrick's pension." The flaw in her argument is that Patrick never received a pension, as he died prior to retiring. As his surviving spouse, Kelly elected to receive the member-survivor allowance, and the

---

[7] As Patrick's designated beneficiary, Colyne received one hundred percent (not thirty-five percent) of Patrick's annuity savings balance.

4

board was required to pay her as such.[8]  See G. L. c. 32,

§ 12 (2) (d).

Because the DRO was silent as to accidental death benefits,

Colyne is not entitled to them.  See G. L. c. 32, § 9 (2) (a).

Notwithstanding, the passing mention of this issue in Colyne's

brief does not rise to adequate appellate argument and therefore

we need not consider it.  See Mass. R. A. P. 16 (a) (9), as

appearing in 481 Mass. 1628 (2019).[9]

Life insurance.  Colyne next contends that under the terms

of the agreement, Patrick's life insurance proceeds were a

marital asset subject to division.[10]  At trial, she argued that

the agreement contained no language regarding termination of

Patrick's life insurance obligation, and therefore it was part

of the asset division.  Kelly countered that reading the

agreement as a whole, the life insurance obligation was tied to

Patrick's child support obligation.  Based in part on these

conflicting interpretations, the judge found that the language

---

[8] Similarly, Colyne's claim against the board fails as she was entitled to thirty-five percent of Patrick's retirement if he received a return of his accumulated total deductions or if he retired.  Neither of these events occurred.

[9] Because we conclude that summary judgment was properly granted, we need not reach Colyne's unjust enrichment claim.

[10] The agreement provided that Patrick was to "maintain his existing life insurance policy through his City Retirement Plan naming [Colyne] as beneficiary."

5

regarding Patrick's life insurance obligation was ambiguous. This determination is a question of law. See Browning-Ferris Indus., Inc. v. Casella Waste Mgt. of Mass., Inc., 79 Mass. App. Ct. 300, 307 (2011) (judge must first determine whether contract language is reasonably susceptible to more than one interpretation). On this record, we agree with the judge that there was genuine uncertainty in the language itself, and not a mere disagreement between the parties. See id.

Having found the life insurance obligation set forth in the agreement to be ambiguous, the judge properly considered parol evidence to clarify the ambiguity. See Winchester Gables, Inc. v. Host Marriott Corp., 70 Mass. App. Ct. 585, 591-593 (2007). Reviewing the agreement in its totality, the judge found that the contested life insurance language was "intended to be tied to [Patrick]'s child support obligation," and not, as Colyne claimed, as a division of marital assets. He based this finding on the following: the contested language was contained within that portion of the agreement titled "Support of Minor Children" and not in the separate sections concerning the disposition of marital assets and it required Patrick to maintain the policy and did not say that Colyne was entitled to the policy or its proceeds. Indeed, the judge found that if Colyne's position prevailed, it "would result in an extremely

disproportionate division of marital assets."  From this the judge concluded that "[t]his weighs against [Colyne's] argument that the life insurance was part of the division of marital property."  Importantly, Colyne did not testify nor was there evidence that the life insurance obligation was not intended to be tied to Patrick's support obligation.  All of these findings have ample support in the record, and as such, are not clearly erroneous.  See Adoption of Daniel, 58 Mass. App. Ct. 195, 200 (2003).

To the extent that Colyne's argument is a challenge to the credibility determinations made by the judge, we do "not substitute our judgment for that of the trier of fact."  G.B. v. C.A., 94 Mass. App. Ct. 389, 393 (2018).  Finally, we note that a "judge has the authority to order a party in a divorce to secure a life insurance policy for the benefit of a child."  Warnajtys v. Warnajtys, 97 Mass. App. Ct. 690, 693 (2020).  See Robbins v. Robbins, 16 Mass. App. Ct. 576, 579 (1983).  This is consistent with the judge's finding that Patrick's life

7

insurance obligation was tied to his child support obligation and was intended to terminate when the latter obligation ended.[11]

> Judgment affirmed.
>
> By the Court (Blake, C.J., Shin & Wood, JJ.[12]),

Clerk

Entered:  May 8, 2026.

---

[11] The defendants' request for attorney's fees is denied.

[12] The panelists are listed in order of seniority.

8