NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1741                                       Appeals Court

          REBECCA KELCOURSE  vs.  LAWRENCE KELCOURSE.


                       No. 13-P-1741.

       Essex.     October 6, 2014. - January 21, 2015.

            Present:  Graham, Brown, & Sullivan, JJ.


Husband and Wife, Antenuptial agreement.  Contract, Antenuptial
     agreement.  Divorce and Separation, Division of property.



     Complaint for divorce filed in the Essex Division of the
Probate and Family Court Department on August 20, 2010.

     The case was heard by Amy L. Blake, J.


     William M. Driscoll for the husband.
     Joel Rosen for the wife.


     BROWN, J.  This is an appeal by the husband from an amended

judgment of divorce nisi.  The central question on the appeal is

whether the antenuptial agreement between the parties was

enforceable.  In addition, the husband claims the judge abused

her discretion by awarding the wife $400,000 as, essentially,

the principal residence substitute.

In the circumstances presented here, we are called upon to explore the underlying rationale of the so-called "second look" as specifically explicated in DeMatteo v. DeMatteo, 436 Mass. 18, 37-38 (2002). See Austin v. Austin, 445 Mass. 601, 607 (2005).

Upon review of the briefs and record appendix, we discern nothing inconsistent with the so-called "second look" teachings of DeMatteo v. DeMatteo, supra, nor do we think the Probate and Family Court judge abused her discretion or otherwise committed an error of law.

1. Background. The husband and the wife were married on July 6, 1991. At the time of the marriage, the husband was in his forties and owned and operated a business, Larry's Marina, Inc.; the wife was in her mid-twenties, pregnant with the parties' second child and a homemaker. Prior to the marriage, the parties lived together for five years in a residence located at the marina. The marina residence contained three bedrooms and was situated on the water. This was the husband's second marriage and the wife's first. The husband's first marriage ended by divorce.

In mid-1990, the husband informed the wife that he wanted to execute an antenuptial agreement to protect his existing assets. In the spring of 1991, the husband notified the wife that he no longer wanted to live at the marina; the parties

moved to Amesbury and rented a residence there. The husband promised the wife that the rental would be temporary. The parties executed the antenuptial agreement on July 2, 1991, four days prior to their wedding. They each were represented by independent counsel when negotiating the agreement.

The antenuptial agreement waived the husband's and the wife's interest in all premarital property separately owned by the other spouse. The wife owned no appreciable assets at the time the agreement was executed. The agreement provided that a principal residence, if purchased during the course of the marriage, would be deemed the wife's separate property irrespective of how title was held. The agreement left the issue of spousal support open and no waiver of same was contained in the agreement.

The parties remained married for nearly twenty years. In 2005, after the parties had rented the residence in Amesbury for about fifteen years, the landlord decided to sell the property. The parties engaged an inspector who determined that the house was substandard and needed an estimated $80,000 to $100,000 in repairs. The husband promised the wife that he would secure funding to make the repairs. In 2006, anticipating repairs, the wife acquiesced, and the parties purchased the home for $320,000, a discounted price. Repairs were never made to the home, and in 2010, the parties separated; the husband moved to

the marina. The marina residence, inclusive of Larry's Marina, was valued at $1.7 million and was not encumbered by a mortgage. The residence in Amesbury was encumbered by a $256,000 mortgage and had deteriorated further. It contained boarded-up windows, chipped paint, hanging utility wires, and black mold, and was rodent infested. By August, 2011, there had been a further reduction in the property value of the residence[1] and in December, 2011, it was estimated that repairs in an amount around $300,000 needed to be completed. Three children were ultimately born to the parties.[2]

2. The agreement. An antenuptial agreement is enforceable if it was valid when executed, and is conscionable at the time of divorce. See DeMatteo v. DeMatteo, supra at 26-38.[3] A "second look" at the agreement during divorce proceedings ensures that it "has the same vitality at the time of the divorce that the parties intended at the time of [the agreement's] execution." Id. at 37. A prenuptial agreement will not be enforced if enforcement, "due to circumstances occurring during the course of the marriage, . . . would leave

---

[1] In August, 2011, the home was appraised at $190,000, approximately $66,000 less than the current mortgage.

[2] Child support is not at issue here.

[3] The judge stated in her findings that the validity of the antenuptial agreement was governed by the principles set forth in DeMatteo.

the contesting spouse 'without sufficient property, maintenance, or appropriate employment to support' herself." Ibid., quoting from 1 H.H. Clark, Jr., Domestic Relations in the United States § 1.9 (2d ed. 1987). The Probate and Family Court judge found that the prenuptial agreement was valid when entered into by the parties, but upon taking a second look, the judge found that it could not be enforced.[4] She determined that the purchase of the principal residence and its subsequent neglect constituted a change in circumstance beyond what the parties contemplated when they executed the agreement, and that enforcement of the agreement would be unconscionable.

The record contains sufficient evidence to support the judge's determination. Crucial to this finding is that enforcement of the agreement would, as the judge noted, leave the wife "a house with negative equity,[5] with documented structural issues, with documented code violations, and with needed repairs and/or renovations approximated to be upwards of $300,000."

---

[4] The parties are not contesting the agreement's fairness and reasonableness at the time of execution.

[5] The husband asserts, among other things, that the former marital home has a "positive equity" of $62,000. The provisions of the agreement on which the husband relies in making his claim are not a model of clarity and, in all events, the husband's position does not appear, on the papers before us, to have been pressed below.

If the agreement is enforced, the wife, who makes $300 per week, would be left without sufficient property and appropriate employment to support herself.[6] The judge's determination that enforcement of the agreement would be unconscionable was not in error.

3. Marital property. In a divorce action, a judge must fairly consider the relevant factors outlined in G. L. c. 208, § 34, when dividing marital property. The division must be an honest exercise of judicial discretion, but "need not proceed on any precise mathematical formula." Downing v. Downing, 12 Mass. App. Ct. 968, 969 (1981). Finding the agreement to be unconscionable, the judge appropriately applied the factors enumerated in G. L. c. 208, § 34. Cf. Austin v. Austin, 62 Mass. App. Ct. 719, 731 (2004), rev'd on other grounds, 445 Mass. at 607. The judge considered, inter alia, the wife's occupation, opportunity for future income, age, and contribution as a homemaker, as well as the needs of the couple's dependent

---

[6] That the wife was also awarded $1,352 per week as alimony, an award that is to terminate upon the first to occur of certain contingencies, including the husband's attainment of full Social Security retirement age as defined by G. L. c. 208, § 48 (at the time of trial the husband was sixty-five years old), see G. L. c. 208, § 49(f), would not, in the circumstances presented, lead us to a different conclusion.

children.[7]  We find no abuse of discretion, or other error of law, in the division of assets.

The wife seeks the costs associated with producing the supplemental appendix.  The request for additional costs is denied.

Accordingly, the amended judgment is affirmed.  The request for additional costs is denied.

<u>So ordered</u>.

_____

[7] The judge also made reference in her findings to the "spirit and intent of the agreement," a point that the husband does not meaningfully challenge in his brief.  At all events, it would appear that the judge's language in some respects implicates the contribution factor in § 34, and would not cause us to reach a different result in this case.